UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X  *Civil Case No.*:
ANGELA MARIA DEFEBIO,                          1:16-cv-05735(DLI-RER)

                            Plaintiff,

         -against-


ALLSTATE INSURANCE COMPANY,


                            Defendant,
-----------------------------------------------------------X

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---


**BERSON & BUDASHEWITZ LLP**
15 Maiden Lane, Suite 1305
New York, New York 10038
Tel: (212) 945-5000
Fax: (212) 945-0796
E-mail: berbudlaw@gmail.com
*Attorneys for Angela Maria DeFebio*


*Of Counsel and on the Brief:*
    Jeffrey A. Berson, Esq.


Served on October 18, 2017

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT………………………………………………1

STATEMENT OF FACTS……………………………………………………..1

POINT I

    **STANDARD OF REVIEW**………………………………………….3

POINT II

    **ALLSTATE HAS FAILED TO DEMONSTRATE ITS PRIMA FACIE ENTITLEMENT TO SUMMARY JUDGMENT AS A MATTER OF LAW**……………………………………….……………………….4

POINT III

    **AMBIGUOUS LANGUAGE CONTAINED IN ALLSTATE'S EXCLUSION PRECLUDES AN EFFECTIVE DISCLAIMER**….…6

POINT IV

    **DEFENDANT DELIBERATELY ALLOWED AN AMBIGUOUS TERM TO EXIST IN ITS POLICY AND SHOULD NOT BE PERMITTED TO FORCE ITS OWN INTERPRETATION ON PLAINTIFF AGAINST COVERAGE WHEN ANOTHER, REASONABLE INTERPRETATION EXISTS IN FAVOR OF COVERAGE**……………………………………………………8

POINT V

    **AN INSURER MUST GIVE WRITTEN NOTICE OF A DISCLAIMER OF COVERAGE AS SOON AS IS REASONABLY POSSIBLE, THE FAILURE TO DO SO RENDERS THE DISCLAIMER INEFFECTIVE**……………………………………………22

**CONCLUSION**………………………………………………………..25

## TABLE OF AUTHORITIES

**Cases**  **Page**

*Aetna Cas. & Sur. Co. v Miller,*
 276 F Supp 341 ............................................................................... 6, 7, 11, 16

*Allstate Ins. Co. v. Cruz,*
 30 A.D.3d 511 (2nd Dept. 2006)…………………………………….22, 23, 25

*Allstate Ins. Co. v. DiBello,*
 40 A.D.3d 401(1st Dept. 2007) ........................................................... 17

*Allstate Ins. Co. v. Gominiak,*
 147 A.D.2d 979 (4th Dept. 1989)......................................................... 17

*Allstate Ins. Co. v. Jahrling,*
 16 A.D.2d 501 (3rd Dept. 1962) .......................................................... 18

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ............................................................................. 4

*Artis v. Aetna Cas. & Sur. Co.,*
 256 A.D.2d 429 (2nd Dept. 1998)......................................................... 16

*Auerbach v. Otsego Mut. Fire Ins. Co.,*
 36 A.D.3d 840 (2nd Dept. 2007)........................................................ 12, 13

*Auto. Ins. Co. of Hartford v. Cook,*
 7 N.Y.3d 131 (2006) ............................................................................ 4

*Avondale Indus., Inc. v. Travelers Indem. Co.,*
 887 F.2d 1200 (2d Cir. 1989) (applying New York law)....................... 5

*Berkowitz v New York Life Ins. Co.,*
 256 App Div 324 .................................................................................. 7

*Breed v. Ins. Co. of N. Am.,*
 46 N.Y.2d 351 (1978) .......................................................................... 5

*Burr v Commercial Travelers Mut. Acc. Assn.,*
 295 NY 294 .......................................................................................... 7

*Cal-Farm Ins. Co. v Boisseranc,*
 151 Cal App 2d 775, 312 P2d 401 ....................................................... 7

*Cincinnati Indem. Co. v Martin,*
 85 Ohio St 3d 604, 710 NE2d 677 [1999]............................................ 20

*Consol. Edison Co. of N.Y. v. Allstate Ins. Co.,*
 98 N.Y.2d 208 [2002] .......................................................................... 5

*Cont'l Cas. Co. v. Rapid-Am. Corp.,*
 80 N.Y.2d 640 (1993) .......................................................................... 5

*Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp.,*
 22 N.Y.3d 571 (2014) ....................................................................... 6, 25

*Cragg v. Allstate Indem. Corp.,*
 17 N.Y.3d 118 (2011) ...................................................................Passim

*Day v Allstate Indem. Co.,*
 332 Wis 2d 571, 798 NW2d 199, 2011 WI 24] ................................... 21

*Denn v. Vanguard Ins. Co.,*
 707 F.Supp. 104 (E.D.N.Y. 1989)........................................................ 18

*Firemen's Fund Ins. Co. of Newark v. Hopkins,*

88 N.Y.2d 836[1996] ................................................................................................ 23

*First Fin. Ins. Co. v. Jetco Contracting Corp.,*
  1 N.Y.3d 64 (2003) ..................................................................................... 6, 22, 24

*Fish King Enters. v. Countrywide Ins. Co.,*
  88 A.D.3d 639 (2nd Dept. 2011)………………………………………………...23,24,25

*General Assur. Co. v. Schmitt,*
  265 A.D.2d 299 (2nd Dept. 1999)...................................................................Passim

*Gregorio v J.M. Dennis Constr. Co. Corp.,*
  21 A.D.3d 1056 [2nd Dept. 2005]................................................................... 23

*Handelsman v. Sea Ins. Co.,*
  85 N.Y.2d 96 (1994) ........................................................................................ 6

*Hartford ins. Co. of Midwest v. Casella,*
  278 A.D.2d 417 (2nd Dept. 2000)................................................................... 13

*Hartford Ins. Co. v. County of Nassau,*
  46 N.Y.2d 1028 (1979) .................................................................................. 5, 22

*Hollander v. Nationwide Mut. Ins. Co.,*
  60 A.D.2d 380 (3rd Dept. 1978) ............................................................... 6, 8, 12

*Int'l Paper Co. v. Cont'l Cas. Co.,*
  35 N.Y.2d 322 (1974) ....................................................................................... 5

*Kenyon v Knights Templar & Masonic Mut. Aid Assn.,*
  122 NY 247 ......................................................................................................... 7

*Korson v. Preferred Mut. Ins. Co.,*
  55 A.D.3d 879 (2nd Dept. 2008)..................................................................... 14

*Matter of Mostow v State Farm Ins. Cos.,*
  88 NY2d 321 [1996] .................................................................................... 11, 20

*Matter of State Farm v. Nater,*
  22 A.D.3d 762 (2nd Dept. 2005)..................................................................... 19

*Mazzilli v Accident & Cas. Ins. Co.,*
  35 NJ 1, 170 A2d 800....................................................................................... 7

*McCarthy v. Dun & Bradstreet Crop.,*
  482 F.3d 184 (2d Cir. 2007)............................................................................. 4

*Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.,*
  702 F.3d 118 (2d Cir. 2012)............................................................................. 5

*Merzier v. Allstate Ins. Co.,*
  2009 WL 399989 (Sup. Ct. Kings County 2009)........................................... 17

*Miller v Continental Ins. Co.,*
  40 NY2d 675 ...................................................................................................... 7

*Miller v United States Fid. & Guar. Co.,*
  127 NJ Super 37, 316 A2d 51 ......................................................................... 7

*Morales v. Quintel Entm't, Inc.,*
  249 F.3d 115 (2d Cir. 2001)............................................................................. 4

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Deloach,*
  708 F. Supp. 1371 (S.D.N.Y. 1989)................................................................ 4

*Nationwide Ins. Co. v. Allstate Ins. Co.,*
  181 A.D.2d 1022 (1992) .................................................................................. 17

*Nationwide Mut. Ins. Co. v Steiner,*

199 AD2d 507 [1993] ...................................................................................................... 22

*Pioneer Tower Owners Assn. v State Farm Fire & Cas. Co.,*
12 NY3d 302 [2009] ................................................................................................ 11, 20

*Quincy Mut. Fire Ins. Co. v. Uribe,*
45 A.D.3d 661 [2nd Dept. 2007] ..................................................................................... 24

*R.G. Group, Inc. v. Horn & Hardart Co.,*
751 F.2d 69 (2d Cir. 1984) ................................................................................................ 4

*Schaut v Firemen's Ins. Co.,*
130 AD2d 477 ...................................................................................................... Passim

*Seaboard Sur. Co. v Gillette Co.,*
64 NY2d 304 [1984] ................................................................................................. 11, 20

*Shelby Cas. Ins. v. Compono,*
8 A.D.3d 857 (2nd Dept. 2004) (2nd Dept. 2004) ......................................................... 17

*Sirius Am. Ins. Co. v. Vigo Constr. Corp.,*
48 A.D.3d 450 [2nd Dept. 2008] ..................................................................................... 23

*Sperling v. Great Am. Indem. Co.,*
7 N.Y.2d 442 (1960) ............................................................................................... 6, 8, 12

*Stainless, Inc. v Employers Fire Ins. Co.,*
69 AD2d 27 ........................................................................................................................ 7

*Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.,*
55 F.3d 114 (2d Cir. 1995) (applying New York law) ....................................................... 4

*Wasserheit v New York Cent. Mut. Fire Ins. Co.,*
271 AD2d 439 [2000] ...................................................................................................... 22

*West 16th St. Tenants Corp. v. Public Serv. Mut. Ins. Co.,*
290 A.D.2d 278 [1st Dept. 2002] .................................................................................... 23

*Whirlpool Corp. v Ziebert,*
197 Wis. 2d 144, 539 NW2d 883 [1995] ........................................................................ 21

*Wrigley v. Potomac Ins. Co.,*
122 A.D.2d 361 (3rd Dept. 1986) .......................................................................... 8, 10, 11

**Statutes and Rules**

New York Insurance Law § 3420(d)(2) ............................................................................. 5

Rules

Fed. R. Civ. P. 56(a) .......................................................................................................... 3

Fed. R. Civ. P. 56(c)(1) ...................................................................................................... 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X          *Civil Case No.*:
ANGELA MARIA DEFEBIO,                                              16-cv-05735(DLI-RER)

                               Plaintiff,
      -against-

ALLSTATE INSURANCE COMPANY,

                             Defendant,
------------------------------------------------------------X

      Plaintiff Angela Maria DeFebio ("DeFebio"), by and through her undersigned attorneys,

hereby submits this memorandum of law in opposition to the Motion for Summary Judgment

filed by Defendant Allstate Insurance Company ("Allstate").

## PRELIMINARY STATEMENT

      Allstate's disclaimer issued thirty-three days after it was aware of the facts supporting the

basis for its disclaimer is untimely and consequentially ineffective as a matter of law. The

investigation performed by Allstate does not excuse the delay in disclaiming as there was no

need for an investigation in that Allstate already had been informed by its insured when the claim

was reported that the claimant was her cousin and resided with her. Additionally, the disclaimer

is ineffective in that the exclusion upon which Allstate based its disclaimer contains ambiguous

language which must be construed against Allstate and in favor of coverage.

## STATEMENT OF FACTS

      On January 16, 2013, Plaintiff, Angel Maria DeFebio (hereinafter "DeFebio") was

injured when she fell off a ladder at 61 Duffield Street, Brooklyn, New York. Pl. Ex. A,

Affidavit of Angela Maria DeFebio ¶ 2. 61 Duffield Street was a multifamily house owned by

Rose T. Juliano (hereinafter "Juliano"), DeFebio's cousin. Pl. Ex. A, Affidavit of Angela Maria

DeFebio ¶ 3. On that date Juliano had a homeowner's insurance policy with Allstate. Pl. Ex. C,

1

Certified Copy of Insurance Policy, pages 1 and 2 of the policy declaration.

On January 23, 2013, Juliano reported the accident to Allstate by telephone. Pl. Ex. D, Allstate Claim History Report, page 13. Juliano informed Allstate that DeFebio is her cousin who resides with her. That she pays rent/bills. That she is 80 years old and DeFebio 56 years old. That DeFebio fell while using Juliano's ladder to hang drapes. That DeFebio was hospitalized for about a week with a fractured ankle. DeFebio also spoke to Allstate on that day. Pl. Ex. D, Allstate Claim History Report, page 13.

DeFebio rented one room from Juliano for which she paid rent. Pl. Ex. B, Affidavit of Rose T. Juliano ¶ 5.  The room DeFebio rents has a locked door and Juliano does not have access to the room. Pl. Ex. B, Affidavit of Rose T. Juliano ¶ 5.  That DeFebio only resides there three days a week. Pl. Ex. B, Affidavit of Rose T. Juliano ¶ 5.  They do not share groceries or eat together. Pl. Ex. B, Affidavit of Rose T. Juliano ¶ 5.  In addition, Juliano did not consider DeFebio a member of her household. Pl. Ex. B, Affidavit of Rose T. Juliano ¶ 5.

By letter dated February 25, 2013, thirty-three days after Allstate had been placed on notice of the claim and were informed that DeFebio was Juliano's cousin and resided in the house three days a week, Allstate disclaimed coverage on that basis. Pl. Ex. E, Disclaimer letter dated February 25, 2013. On the second page of the disclaimer letter, the basis for the disclaimer is stated as follows:

> You have informed Allstate that the above referenced claimant. Is your cousin, and that she resides in your apartment at least three days per week, when she is not working as a home attendant. It is therefore Allstate's position that the above referenced claimant is an **insured person** as that term is defined in the Allstate Standard Homeowners Policy (Form AP315) issued to you. Therefore the above quoted exclusions numbered "2" bar coverage for the above referenced claim. (emphasis in original)

> The exclusion referred to and quoted in the disclaimer letter read as follows:

2

Under the heading *Coverage X Family Liability Protection*, "*Losses We Do Not Cover Under Coverage X*:  2. We do not cover bodily injury to an insured person or property damage to property owned by an insured person whenever any benefit of this coverage would accrue directly or indirectly to an insured person.

The disclaimer letter also provides the following under definition of insured person: "*Definitions Used In This Policy* 3.  "Insured person(s)" --- means you and, if a resident of your household: a)  any relative b)  any dependent person in your care."

Even though Allstate had already been informed on January 23, 2013, by its own insured that DeFebio was her cousin and resided with her three days a week Allstate had a needless and unnecessary investigation performed which only confirmed what Allstate had already been told by its own insured. Pl. Ex. F.

However, Allstate's actual reason for the disclaimer of coverage appears in the Claim History File Note of February 12, 2013 (Pl. Ex. G, Allstate File Note dated February 12, 2013 and Pl. Ex. D, Allstate Claim History Report page 9 [emphasis added]) which states:

> O/I Investigation confirms the claimant (insured's cousin) lives in her first floor apartment and they share kitchen and bathroom. O/I database search found claimant cousin living at the address for the past 10 years. Recommend coverage opinion from coverage counsel for possible disclaimer for B.I. to an "Insured Person". **Will need to refer file to H.O. if disclaimer warranted due to severity of claimant injury.**

## POINT I

## STANDARD OF REVIEW

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court's function is not "to weigh the evidence and determine the truth of the

3

matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, in ruling on a summary judgment motion, "the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Crop.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). To show a genuine issue of fact for trial, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact ... is genuinely disputed." Fed. R. Civ. P. 56(c)(1). Mere "conclusory allegations or denials" are insufficient to defeat the motion. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Deloach*, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (*citing R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)). Finally, when multiple parties cross-move for summary judgment, as in this case, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## POINT II

### ALLSTATE HAS FAILED TO DEMONSTRATE ITS PRIMA FACIE ENTITLEMENT TO SUMMARY JUDGMENT AS A MATTER OF LAW

In New York, insurers have a broad obligation to defend actions against the insured and must provide a defense even to meritless claims. *See Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006); *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995) (applying New York law) ("[W]here the policy includes an obligation to defend, if there is a doubt as to whether the claim comes within the insurer's duty to indemnify, the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability."). To avoid its duty to defend, the insurer

4

faces a "heavy burden." *Cont'l Cas. Co. v. Rapid-Am. Corp.,* 80 N.Y.2d 640, 654 (1993).

Specifically, the insurer must show that the underlying allegations fall "solely and entirely"

within "specific and unambiguous exclusions from policy's coverage." *Avondale Indus., Inc. v.*

*Travelers Indem. Co.,* 887 F.2d 1200, 1205 (2d Cir. 1989) (applying New York law); *see Int'l*

*Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325 (1974).

The same principles apply to the evaluation of asserted exclusions of coverage. "To

negate coverage by virtue of exclusion, an insurer must establish that the exclusion is stated in

clear and unmistakable language, is subject to no other reasonable interpretation, and applies in

the particular case." *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993). Initially,

the "insurer bears the burden of proving that an exclusion applies." *Ment Bros. Iron Works Co. v.*

*Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012) (*citing Consol. Edison Co. of N.Y.*

*v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 [2002]). When there is an ambiguity, the court must

construe the meaning of any ambiguous term in favor of the insured party. *Breed v. Ins. Co. of N.*

*Am.*, 46 N.Y.2d 351, 357 (1978).

In addition, under New York Law a disclaimer must be timely to be effective. New York

Insurance Law § 3420(d)(2), provides,

> If under a liability policy issued or delivered in this state, an insurer shall
> disclaim liability or deny coverage for death or bodily injury arising out of a
> motor vehicle accident or any other type of accident occurring within this
> state, it shall give written notice as soon as is reasonably possible of such
> disclaimer of liability or denial of coverage to the insured and the injured
> person or any other claimant.

Failure to give timely notice of disclaimer "precludes effective disclaimer or denial." *Hartford*

*Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029 (1979).

The obligation to give notice of disclaimer of liability "as soon as is reasonably possible"

"is measured from the point in time when the insurer first learns of the grounds for disclaimer of

5

liability or denial of coverage.*" First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 68–69 (2003). When "all relevant facts supporting a disclaimer are immediately apparent upon receipt of notice of accident," the disclaimer must be communicated "rapidly." *Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp.*, 22 N.Y.3d 571, 576 (2014).

### POINT III

### AMBIGUOUS LANGUAGE CONTAINED IN ALLSTATE'S EXCLUSION PRECLUDES AN EFFECTIVE DISCLAIMER

In *Handelsman v. Sea Ins. Co.*, 85 N.Y.2d 96, 101 (1994), the Court of Appeals held that, "Where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer." Where an insurer attempts to limit liability by use of an ambiguously worded term which is subject to more than one reasonable construction, the courts will construe it strictly against the insurer. *Sperling v. Great Am. Indem. Co.*, 7 N.Y.2d 442, 447, 450 (1960).  This holds particularly true where the ambiguity is in an exclusionary clause. Ambiguous, inconsistent or uncertain terms are to be construed against the insurer, and most favorably to the insured. *Hollander v. Nationwide Mut. Ins. Co.*, 60 A.D.2d 380, 384 (3rd Dept. 1978), *leave denied* 44 N.Y.2d 646 (1978).

Allstate's counsel claims that "The Allstate policy provided to Rose Juliano clearly and unambiguously excludes coverage for bodily injury to an 'insured person.' *See* Ex. G; SOF ¶¶ 9-11, 14." *See* Defendant's Memorandum of Law P. 6, ¶ 1. This claim is erroneous as it has been consistently held that the term "household" is ambiguous as a matter of law. *General Assur. Co. v. Schmitt*, 265 A.D.2d 299, 300-301 (2nd Dept. 1999).  Here Allstate claims that DeFebio is a resident of its insured's "household" and therefore falls under that policy exclusion.

> "**The term 'household' has been characterized as ambiguous or devoid of any fixed meaning in similar contexts** (*see, Hollander v Nationwide Mut. Ins. Co.*, 60 AD2d 380, 383, *lv denied* 44 NY2d 646; *Aetna Cas. & Sur. Co. v Miller*, 276

F Supp 341; *Miller v United States Fid. & Guar. Co.*, 127 NJ Super 37, 316 A2d 51) and, as such, its interpretation requires an inquiry into the intent of the parties (*see, Kenyon v Knights Templar & Masonic Mut. Aid Assn.*, 122 NY 247, 254). The interpretation must reflect 'the reasonable expectation and purpose of the ordinary business man when making an insurance contract' (*Burr v Commercial Travelers Mut. Acc. Assn.*, 295 NY 294, 301) and the meaning 'which would be given it by the average man' (*Berkowitz v New York Life Ins. Co.*, 256 App Div 324, 326; *see, Miller v Continental Ins. Co.*, 40 NY2d 675; *Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, *affd* 49 NY2d 924). Moreover, the circumstances particular to each case must be considered in construing the meaning of the term (*see, Kenyon v Knights Templar & Masonic Mut. Aid Assn., supra; Mazzilli v Accident & Cas. Ins. Co.*, 35 NJ 1, 170 A2d 800; *Cal-Farm Ins. Co. v Boisseranc*, 151 Cal App 2d 775, 312 P2d 401)" (*Schaut v Fireman's Ins. Co.*, 130 AD2d 477, 478- 479). *General Assur. Co. v. Schmitt*, 265 A.D.2d at 300-301(emphasis added).

In *Aetna Casualty and Surety Company v. Miller*, 276 F. Supp. 341, 344-345 (D. Kansas, 1967) the District Court cited *Cal-Farm Ins. Co. v Boisseranc*, 151 Cal.App.2d 775 [1957]); also cited by the Second Department in *General Assur. Co. v. Schmitt*, 265 A.D.2d at 300, to explain the sometime opposite holdings in the interpretation of the term "household". The District Court explained that,

> "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. If the insurer uses language which is uncertain any reasonable doubt will be resolved against him; if the doubt relates to extent or fact of coverage, whether as to peril insured against, the amount of liability or the person or persons protected, the language will be understood in its most inclusive sense, for the benefit of the insured."

> As counsel for the plaintiff states, the term 'residence' and 'household' have been interpreted by the courts of America in varying degrees of context, it being possible to find cases interpreting the words in opposite ways. In such cases their interpretation is sought to be explained by rules of construction, i.e., broad construction for so-called extension cases, and narrow construction for so-called exclusion cases. Here, again, the California court, in *Cal-Farm Insurance Company v. Boisseranc*, supra, seems to hit the nail directly on the head when it said:

> "Both attempt to apply the rules of construction above discussed. As a result, in

the extension cases the questions terms are broadly interpreted, while in the exclusion cases the same terms are given a much more restricted interpretation. This is necessary because in both situations the courts favor an interpretation in favor of coverage."

In the present case, we are presented with an exclusion case and as a result requires that the ambiguous term "household" be given a restricted or narrow interpretation, and the ambiguous term is to be construed against the insurer as required by the holdings in *Wrigley v. Potomac Ins. Co.*, 122 A.D.2d 361 (3rd Dept. 1986); *Sperling v. Great Am. Indem. Co.,* 7 N.Y.2d 442, 447, 450 (1960) and *Hollander v. Nationwide Mut. Ins. Co.*, 60 A.D.2d 380, 384 (3rd Dept. 1978), *leave denied* 44 N.Y.2d 646 (1978).

## POINT IV

**DEFENDANT DELIBERATELY ALLOWED AN AMBIGUOUS TERM TO EXIST IN ITS POLICY AND SHOULD NOT BE PERMITTED TO FORCE ITS OWN INTERPRETATION ON PLAINTIFF AGAINST COVERAGE WHEN ANOTHER, REASONABLE INTERPRETATION EXISTS IN FAVOR OF COVERAGE**

In *General Assur. Co. v. Schmitt*, the exclusion was the same as in the present case (*id.*, at 300):

> The insurance policy at issue excludes coverage for "*bodily injury* to you or an *insured* within the meaning of part a. or b. of '*insured*' as defined". The term "insured" is defined as, *inter alia,* "residents of your household who are: a. your relatives; or b. other persons under the age of 21 and in the care of any person named above". While the policy defines residence premises as including a two-family house where, as here, it is shown as such on the "Declarations" page, there is no definition of "household" in the policy.

The court in *General Assur. Co. v. Schmitt*, 265 A.D.2d 299, 300-301(internal citation omitted, emphasis added) wrote:

> "The law is clear that if an insurance policy is written in such language as to be doubtful or uncertain in its meaning, **all ambiguity must be resolved in favor of the insured against the insurer**. **The term 'household' has been characterized as ambiguous or devoid of any fixed meaning in similar contexts** and, as such, its interpretation requires an inquiry into the intent of the parties. The interpretation must reflect 'the reasonable expectation and

8

purpose of the ordinary business man when making an insurance contract' and the meaning 'which would be given it by the average man'. Moreover, the circumstances particular to each case must be considered in construing the meaning of the term."

In *General Assur. Co. v. Schmitt*, plaintiff insured a two-family home (premises) owned by Louise Schmitt under a homeowner's policy. It was alleged that Brian Mohr, the owner's grandson, fell and injured himself on front stoop of premises. Louise Schmitt lived in the premises' first floor apartment, while defendant, Brian Mohr the owner's grandson, lived in second floor apartment together with his mother, Dolores Rapp (the owner's daughter). The insurance carrier sought to disclaim coverage for the claim made against the owner, its insured, by defendant Brian Mohr the owner's grandson, in an underlying personal injury suit. The insurance policy, as in the present case, excluded coverage for "bodily injury to you or insured within the meaning of part a. or b. of 'insured' as defined"; term "insured" is defined as "residents of your household who are: a. your relatives; or b. other persons under the age of 21 and in the care of any person named above". As in the present case, there was no definition of "household" in the policy.

On the plaintiff, insurer's action for a declaratory judgment the trial court concluded "that the policy terms were ambiguous, and therefore summary judgment could not be granted because a question of fact existed as to whether Schmitt reasonably believed that she was obtaining liability coverage for a household that included her relatives living in the second floor apartment of the premises." *Id.*, at 300. After stating the applicable law quoted above, the Appellate Division, Second Department, reversed the trial court's order, stating (*Id.,* at 301) (internal citations omitted, emphasis added):

> **Resolving any ambiguity in the policy in favor of Schmitt**, and under the circumstances presented here, it is clear that Mohr was not a member of Schmitt's household. Rapp paid Schmitt rent for the second floor apartment

9

she and Mohr lived in. That apartment also received separate bills for the household gas and electric used by Rapp and Mohr. While Schmitt and Mohr occasionally ate together in Schmitt's apartment and she would occasionally visit her daughter in the upstairs apartment, each apartment had a separate locked inner entrance door which excluded, *inter alia,* Schmitt from entering at will. **Since Schmitt would not have considered Mohr to be a member of her household, she was entitled to coverage for claims for damages due to his bodily injury in this instance.**

The rationale in *General Assur. Co. v. Schmitt* applies here, that is, ambiguity in the terms of the policy must be construed in favor of finding coverage and the intent of the insured must be considered. Here, when Rose Juliano purchased the insurance for the house from Allstate the intention was that she would be the insured not her tenants. DeFebio did not even reside in the house when the insurance was first purchased from Allstate. More importantly, Rose Juliano did not consider DeFebio a member of her household. *See* Plaintiff Ex. B Rose T. Juliano affidavit ¶6.

In *Wrigley v. Potomac Insurance Co.*, the plaintiffs, May and Davis Wrigley, were residents of Fort Edward, New York, and Pasadena, California. They also owned a home in Lake George, New York, on which they maintained a homeowner's policy with the defendant. Plaintiffs Keith and Susan Wrigley were the primary residents of the Lake George dwelling, where May and Davis stayed approximately not more than one week a year.

When a fire destroyed the Lake George home, the defendant compensated May and Davis for their losses, but not Keith and Susan. The ground asserted was that, since neither May nor Davis resided at the Lake George property, Keith and Susan were not, as a matter of law, members of their household. In *Wrigley,* similar to Allstate herein, the definition of household that the defendant insurer proffered, albeit it was not contained in the policy, was " 'a family living together... [t]hose who dwell under the same roof and compose a family' " *Id.* 122 A.D.2d at 362.

10

In *Wrigley*, an inclusion case, the court in rejecting the insurer's position, noted that "the term household has rarely been given the restrictive, exclusive definition urged by defendant (citations omitted). To the contrary, it is considered to be an ambiguous term (citations omitted) and variously defined depending upon the circumstances" (*id.*, at 362). The court in *Wrigley* went on to say that "[w]hen a clause in an insurance policy extends coverage to household members, the term household has been broadly construed" (citations omitted), but "where household members are excluded from coverage," "[t]he converse is true" (*id.*).

As the Court of Appeals explained in *Cragg v. Allstate Indem. Corp.,* 17 N.Y.3d 118, 122 (2011),

"Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured (*see Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326-327 [1996]). To the extent that there is any ambiguity in an exclusionary clause, we construe the provision in favor of the insured. Moreover,

> exclusions or exceptions from policy coverage . . . are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation (*Pioneer Tower Owners Assn. v State Farm Fire & Cas. Co.*, 12 NY3d 302, 307 [2009], quoting *Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [1984]).

In the present case Allstate fails to meet this burden as its exclusion is ambiguous."

It is important when examining the cited cases dealing with the ambiguous term "household" to apply the rules of construction, i.e., broad construction for so-called extension cases, and narrow construction for so-called exclusion cases. This is necessary because in both situations the courts favor an interpretation in favor of coverage. *Aetna Casualty and Surety Company v. Miller*, 276 F. Supp. at 344-345; *Wrigley v. Potomac Ins. Co.*, 12 A.D.2d at 362;

11

*Cragg v. Allstate Indem. Corp.,* 17 N.Y.3d at 122; *Sperling v. Great Am. Indem. Co.,* 7 N.Y.2d

442, 447, 450; *Hollander v. Nationwide Mut. Ins. Co.*, 60 A.D.2d 380, 384; and *Schaut v.*

*Firemen's Ins. Co. of Newark New Jersey*, 130 AD2d 477 (2nd Dept. 1987).

Allstate in support of its argument that DeFebio should be considered a member of its

insured's household misstates the facts and misconstrues the holdings of several cases. In its

argument concerning the term "household" Allstate continually claims that there were no locked

interior doors, stating, "There was no lock separating the space that belonged to plaintiff from

the space that belonged to Rose Juliano. *See* SOF ¶ 30." *See* Allstate's Memorandum of Law P.

14 ¶ 3, and P. 15 ¶ 1.  However, Allstate's Statement of Facts provides no evidence supporting

Allstate's claim. Moreover, both the affidavit of Juliano, Plaintiff Ex. B Rose T. Juliano affidavit

¶ 5, and the affidavit of DeFebio, Plaintiff Ex. A Angela Maria DeFebio affidavit ¶ 3, indicate

that there were locked inner doors which excluded, Juliano from entering DeFebio's room at

will. In addition, Allstate incorrectly claims that DeFebio had no other residence although

Allstate was aware that DeFebio only resided at the insured premise three days a week.  *See*

Allstate's Memorandum of Law P. 8 ¶ 2.

Reviewing the cases cited by Allstate in its Memorandum of Law it is clear that the cases

do not support Allstate's position herein.

Starting with *Auerbach v. Otsego Mut. Fire Ins. Co.*, 36 A.D.3d 840 (2nd Dept. 2007).

*Auerbach*, is an inclusion case where the ambiguous term "household" was broadly defined by

the court so as to afford coverage. 36 A.D.3d at 841. In *Auerbach,* the plaintiffs were the son-in-

law and daughter of the named insureds, the Akguns and resided rent free in the house while the

named insureds lived in Florida at the time of the loss, a fire. "However, the Akguns had their

own bedroom at the house, kept items of personalty throughout the house, received mail at that

12

address, were free to stay at the house whenever they pleased, and in fact stayed at the house at various times for days, weeks, and even months at a time". *Id.* at 841. The defendant, insurance company denied coverage to the plaintiffs for their property destroyed in the fire. The insurer claimed, "that the plaintiffs were not insured under the policy because the insureds premises was not the Akguns' household under the policy". *Id.* at 841. The court in finding there was a triable issue as to whether the house was the Akguns' household for purposes of the insurance policy stated (*id.* at 841) (internal citations and emphasis added),

> **If an insurance policy "is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the [insured] against the [insurer]" The term "household" repeatedly has been characterized as ambiguous** or devoid of any fixed meaning. Accordingly, the interpretation of the term requires an inquiry into the intent of the parties and must reflect "the reasonable expectation and purpose of the ordinary business man when making an insurance contract" and the circumstances of the particular case must be considered.

Next in *Matter of Hartford ins. Co. of Midwest v. Casella*, 278 A.D.2d 417 (2nd Dept. 2000*), lv. denied* 96 N.Y.2d 710 (2001); Mary Casella owned a two-family house and resided on the ground. She rented the upstairs to her niece with whom her father, Palmiro (Casella's brother) resided for part of the year. The occupants shared household expenses and ate meals together in the first floor. The house has one exterior door to the street with access to the upstairs apartment by an interior stairway. Each apartment has a separate interior entrance but there are no locked doors restricting access.

The court found that (*id.* at 418),

> The circumstances presented here fail to establish that Palmiro considered Mary to be a member of his household. Thus, she is not entitled to uninsured motorists coverage under his automobile policy. His description of the parties' living arrangements portrayed the premises as a two-family house, with his daughter Elizabeth living in the upstairs apartment and paying rent. While the house had only one exterior door, he considered the two apartments to be separate living spaces with separate entrance areas and

13

electric meters. Upon their return from Florida each year, he and his wife resided with his daughter in the second floor apartment and not with Mary. His depiction of the parties' living arrangements reveals that he did not consider Mary to be a member of his household and he would not have reasonably anticipated that she would be afforded coverage under his policy of automobile insurance (*see, General Assur. Co. v. Schmitt, supra; cf., Schaut v. Fireman's Ins. Co. of Newark, supra*).

Similarly, Allstate's reliance on *Korson v. Preferred Mut. Ins. Co.,* 55 A.D.3d 879 (2nd Dept. 2008) is misplaced. *Korson* is completely factually distinguishable from the case at bar. The issue in *Korson* was whether plaintiff, Steven Korson resided with his brother Dean Korson in the same household. *Id.* at 880. The court in finding that they resided in the same household noted that, unlike the case at bar, the brothers resided in a single-family home, they co-owned the house, there was unrestricted access between areas of the home. More importantly, both Steven and Dean were named insureds on the underlying homeowner's policy. *Id.* at 881. None of those facts are present in the case before this Court as such *Korson*, is inapplicable to this case.

The next case cited by Allstate is *General Assur. Co. v. Schmitt,* which was previously discussed above and supports DeFebio's argument that she is not a member of Rose Juliano's household. In *General Assur. Co. v. Schmitt*, Schmitt's grandson, Mohr, lived with his mother, Schmitt's daughter in the same multifamily house, they paid rent, ate together and shared a mailbox and one exterior entrance but had separate locked interior doors for their living areas. The court concluded (*id.* at 301) (internal citations omitted),

> Resolving any ambiguity in the policy in favor of Schmitt, and under the circumstances presented here, it is clear that Mohr was not a member of Schmitt's household.

The next case cited by Allstate is *Schaut v. Fireman's Ins. Co. of Newark New Jersey*, 130 A.D.2d 477 (2nd Dept. 1987). In *Schaut,* an inclusion case the Appellate Division, Second Department wrote (*id.*, at 478-79) (internal citations omitted and emphasis added):

14

**"The law is clear that if an insurance policy is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the insured against the insurer. The term 'household' has been characterized as ambiguous or devoid of any fixed meaning in similar contexts** and, as such, its interpretation requires an inquiry into the intent of the parties. The interpretation must reflect 'the reasonable expectation and purpose of the ordinary business man when making an insurance contract' and the meaning 'which would be given it by the average man'. Moreover, the circumstances particular to each case must be considered in construing the meaning of the term."

In *Schaut*, the policy was secured by Anthony Bullotta, the named insured. He did not reside in the insured premises, but his children, including his son, defendant Dale Bullotta, and ex-wife, did. Dale was a defendant in an action by the plaintiff, Albert Schaut, to recover damages for injuries he sustained when Dale's dog bit him. The defendant insurance carrier disclaimed coverage to Dale Bullotta on the ground "that he is not an insured person since he was not a 'resident' of the named insured's 'household'" (*id.,* at 478).

On the plaintiffs' action for a declaratory judgment, the Supreme Court concluded "that 'a fair inference to be drawn from the language of the contract is that "household" as used in the clause was intended to describe the household within the insured premises' and that Dale Bullotta was a 'person who was intended to benefit from coverage'" (*id.*, at 478). After stating the applicable law quoted above, the court affirmed the judgment, stating (*id.*, at 479):

"Viewed in this context, we agree with the trial court that Anthony Bullotta, in purchasing insurance specifically for the home in which his former wife and three sons resided, reasonably anticipated that his children would be afforded coverage thereunder as residents of his 'household'."

The rationale in *Schaut* applies here, that is, "any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the

15

insured for the losses to which the insurance relates". *Aetna Casualty and Surety Company v. Miller*, at 344-345. "In such cases their interpretation is sought to be explained by rules of construction, i.e., broad construction for so-called extension cases, and narrow construction for so-called exclusion cases. Here, again, the California court, in *Cal-Farm Insurance Company v. Boisseranc, supra*, seems to hit the nail directly on the head when it said:

> Both attempt to apply the rules of construction above discussed. As a result, in the extension cases the questions terms are broadly interpreted, while in the exclusion cases the same terms are given a much more restricted interpretation. This is necessary because in both situations the courts favor an interpretation in favor of coverage. *Id.*

Since the term "household" is ambiguous it can have more than one interpretation depending on whether its an inclusion case like *Schaut* where the owner/named insured did not even live in the house but his son who did was found to be a member of the owner's household so as to afford coverage or as in an exclusion case like *General Assur. Co. v. Schmitt*, in which it was found that the owner/named insured's grandson who lived in the same house, ate together and shared a mailbox and one exterior entrance was not a member of the named insured's household so as to afford coverage for his bodily injury claim.

*Artis v. Aetna Cas. & Sur. Co.,*256 A.D.2d 429 (2nd Dept. 1998) and *Commercial Mut. Ins. Co. v. Wagschall*, 256 A.D.2 300 (2nd Dept. 1998) also fail to support Allstate's argument on this issue. In neither *Artis,* nor *Wagschall*, is the issue of the interpretation or application of the ambiguous term "household" raised. The court in *Artis*, makes no mention of the term household in holding that (*id.,* at 430):

> The policy specifically excludes coverage for bodily injuries sustained by a resident relative of a named insured, and medical payments to any person regularly residing at the insured premises. Therefore, the policy of insurance clearly and unambiguously excludes this incident from coverage.

Similarly, the court's focus in *Wagschall*, was residency.

16

In *Shelby Cas. Ins. v. Compono*, 8 A.D.3d 857 (2nd Dept. 2004), unlike the present case, the house at issue was a single-family home and no evidence was submitted that the injured claimant and the named insured maintained separate households. *Id.* at 358.

Neither is the unreported, Kings County, Supreme Court decision in *Merzier v. Allstate Ins. Co.*, 2009 WL 399989 (Sup. Ct. Kings County 2009) of any help to Allstate. First, it must be noted that I was the attorney for plaintiff in *Merzier*, and as such have actual personal knowledge concerning the case. With respect to the late Honorable Justice Herbert Kramer, *Merzier* was wrongly decided and subsequently settled shortly after plaintiff perfected her appeal at a Second Department, Appellate Division, Civil Appeals Management Program Conference for almost the full insurance policy at issue.

If the decision in *Merzier* demonstrates anything it is that Allstate has been knowingly and deliberately attempting for decades to use the same ambiguous language in its insurance policy to avoid providing the insurance coverage that their insureds paid their premiums for. This is further evidenced by the following cases that show that Allstate over the last five decades has attempted to use the ambiguous term "household" to deny coverage changing their claimed interpretation of the term in order to deny coverage. See, *Allstate Ins. Co. v. DiBello*, 40 A.D.3d 401(1st Dept. 2007) [Allstate denied coverage claiming daughter not a resident of her father's household]; *Allstate Ins. Co. v. Rapp*, 7 A.D.3d 302 (1st Dept. 2004) [Allstate denied coverage claiming that grandson was not a resident of his grandfather's household]; *Nationwide Ins. Co. v. Allstate Ins. Co.*, 181 A.D.2d 1022 (1992) [Allstate claimed that daughter was not a resident of mother's household following a divorce]; *Allstate Ins. Co. v. Gominiak*, 147 A.D.2d 979 (4th Dept. 1989) [Allstate denied coverage claiming son was not a resident of his father's household]; *Allstate Ins. Co. v. Chia-I Lung*, 131 Misc.2d 586 (Sup. Ct. Nassau County 1986) [Allstate

17

denied coverage claiming father was a resident of his son's household]; *Allstate Ins. Co. v. Luna*, 36 A.D.2d 622 (2nd Dept. 1971) [Allstate denied coverage claiming that minor son was not a resident of his father's household]; and *Allstate Ins. Co. v. Jahrling*, 16 A.D.2d 501 (3rd Dept. 1962) [Allstate denied coverage claiming that seventeen-year-old son who had enlisted in Navy was not a member of his mother's household]. It is clear, that Allstate has been trying to benefit from the ambiguous term "household" contained in its insurance policies by claiming that relatives of its named insureds are or are not a resident of the "household" by asserting whatever interpretation of the term will avoid coverage.

The next case cited by Allstate *Denn v. Vanguard Ins. Co.*, 707 F.Supp. 104 (E.D.N.Y. 1989), is an inclusion case requiring a broad interpretation of the ambiguous term "household". *Denn* involved a claim for property damage after a fire. The two-family home was owned by Daniel Denn and Mary Denn, son and mother. Violet McDermott who is Daniel Denn's sister and Mary Denn's daughter resided in the upstairs unit in the house with her two daughters. Defendant, Vanguard Insurance Company denied the claim for content damages and loss of use arguing that Violet McDermott and her two daughters were not members of the Dunn's household and therefore not covered. *Id.* at 105. Plaintiffs, the Dunns, argued that although the building was originally built as a two-family residence, they all live as one household, sharing meals, space, one telephone, and household expenses. The insurance policy did not define "household".  The court in granting summary judgment against defendant, Vanguard Insurance Company stated (*id.*, at 106):

> Defendant argues that because this is a two-family building, it cannot contain one household, even though these people are all related, but must be two households. Defendant argues that because when the building was designed and built, it included two apartments each with its own fully equipped kitchen, fully equipped bathrooms, separate doorbells and separate electric meters, it can never be occupied by one household. Under this argument,

18

even a "traditional" family consisting of two parents and their children occupying the entire building would not be one household. If the children occupied the bedrooms in the second apartment upstairs, according to defendant, they would be a separate second household uninsured by this policy. This is an untenable and indeed frivolous interpretation of the language of the policy.

Violet McDermott and her two daughters are "insureds" under the definition of this policy as relatives of the policyholders who reside in the same household as the policyholders.

*Matter of State Farm v. Nater*, 22 A.D.3d 762 (2nd Dept. 2005) is also an inclusion case.

In *Nater*, Jeanette Nater was struck by an uninsured motorcycle. She sought uninsured motorist coverage under the State Farm policy in which her then husband of twelve years, Peter Nater, was the named insured. At that time they were in the process of getting a divorce, and lived in separate apartments within the same two-family house, which they owned jointly. They continued to share all household expenses and continued to share use of the family car, which was registered and insured in the husband's name. The insurance company denied coverage for the wife's claim on the ground that she did not reside in the same "household" as her husband. The court found (*id.,* at 763) (internal citations omitted),

Although the respondent and her now former husband lived in separate parts of the same house, that fact alone was not conclusive in determining whether they remained members of the same "household" for insurance purposes. Notably, the details of their financial and living arrangements during the pendency of the divorce proceeding support the Supreme Court's findings of fact that the spouses continued to maintain a common and reasonably anticipated that the respondent would continue to be afforded coverage under the husband's automobile insurance policy, particularly since they still shared the use of the same car.

The last case cited by Allstate is the Court of Appeals decision of *Cragg v. Allstate*, 17 N.Y.3d 118 (2011). While *Cragg*, is not applicable to the issue concerning the ambiguous term "household" it is informative regarding the legal standard required of an insurer to attain summary judgment based upon a policy exclusion. *Cragg*, was a wrongful death action in which

19

plaintiff, Eric Cragg, was the father of decedent, Kayla Margaret Rose Cragg. Three-year-old Kayla and her mother, defendant Marina Ward, lived with defendant grandparents, Gregory and Katherine Klein, in the Kleins' home. In July 2001, Kayla drowned accidentally in the Kleins' swimming pool. At the time, the Kleins had a homeowner's insurance policy in place that had been issued by Allstate. Plaintiff Eric Cragg, maintained a separate residence and was not an insured under the Kleins' homeowner's insurance policy. Allstate disclaimed coverage based upon the identical policy exclusion at issue in the present case. *Id.*, at 120-121.

In reversing the Appellate Division, the Court of Appeals stated (*id.,* at 122), "Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured (*see Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326-327 [1996]). To the extent that there is any ambiguity in an exclusionary clause, we construe the provision in favor of the insured. Moreover,

> "exclusions or exceptions from policy coverage . . . are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation" (*Pioneer Tower Owners Assn. v State Farm Fire & Cas. Co.*, 12 NY3d 302, 307 [2009], *quoting Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [1984]).

Allstate has not met that burden here".

The Court of Appeals in finding the exclusion ambiguous, in that it did not clearly cut off the nonresident distributee's wrongful death claim, and denying Allstate's motion for summary judgment reasoned that (*id.*, at 123-124) (emphasis added),

> Other jurisdictions have observed that there are valid policy reasons for excluding coverage in cases such as this one. They have noted that homeowner's insurance is generally meant to cover bodily injury to noninsureds (*see Cincinnati Indem. Co. v Martin*, 85 Ohio St 3d 604, 608, 710 NE2d 677, 680 [1999]) and that coverage is excluded in these types of

20

situations in order to avoid imposing liability on the insurer in a case where the insured, due to a close relationship with the injured party, might be unmotivated to assist the insurer in defending against the claim[1] (*see Whirlpool Corp. v Ziebert*, 197 Wis. 2d 144, 149, 539 NW2d 883, 885 [1995]). However, faced with a very similar case addressing the identical exclusion, the Wisconsin Supreme Court recently held that **"Allstate has failed to meet its burden to demonstrate that the policy term 'benefit' unambiguously includes the contractual right to receive a defense or the contractual right to indemnification"** (*Day v Allstate Indem. Co.,* 332 Wis 2d 571, 596-597, 798 NW2d 199, 212, 2011 WI 24, ¶ 57 [2011]). **We agree with this analysis.**

**We therefore find that judgment should have been granted in plaintiff's favor, as the exclusion did not operate to bar coverage** for the noninsured plaintiff's wrongful death claim for the death of the insured decedent.

Finally, we can only wonder why Allstate's attorney's suggested definitions and interpretations of what a "household" is for excluding coverage were not made part of the policy's definition of the word "insured." Having thus deliberately used a word that it must have known is viewed by the courts as "ambiguous or devoid of any fixed meaning" (*Schmitt*, 265 A.D.2d at 300), Allstate is in no position to complain that this Court interprets the ambiguous term in plaintiff's favor to provide coverage in the circumstances of this case. This is especially true in light of the notes contained in Allstate's "File Note" dated February 12, 2013 Pl. Ex. G, and Allstate's "Claim History Report" Pl. Ex. D, page 9., in which it appears that the actual basis for denying coverage was the severity of DeFebio's injury. The internal note reads in part (emphasis added):

O/I Investigation confirms the claimant (insured's cousin) lives in her first floor apartment and they share kitchen and bathroom. O/I database search found claimant cousin living at the address for the past 10 years. Recommend coverage opinion from coverage counsel for possible disclaimer for B.I. to an "Insured Person". **Will need to refer file to H.O. if disclaimer warranted due to severity of claimant injury.**

---

[1] There is no evidence of or claim of lack of cooperation by the insured herein.

## POINT V

**AN INSURER MUST GIVE WRITTEN NOTICE OF A DISCLAIMER OF COVERAGE AS SOON AS IS REASONABLY POSSIBLE, THE FAILURE TO DO SO RENDERS THE DISCLAIMER INEFFECTIVE**

It is well settled that,

An insurer must give written notice of a disclaimer of coverage "as soon as is reasonably possible" (Insurance Law § 3420) after "it first learns of the accident or of grounds for disclaimer of liability or denial of coverage" (*Hartford Ins. Co. v County of Nassau*, 46 NY2d 1028, 1029 [1979]; *see First Fin. Ins. Co. v Jetco Contr. Corp.*, 1 NY3d 64, 68-69 [2003]). An insurer's failure to do so "precludes effective disclaimer or denial" (*Hartford Ins. Co. v County of Nassau, supra* at 1029), even where the insured and the injured party have failed to provide the insurer with timely notice of the claim in the first instance (*see Wasserheit v New York Cent. Mut. Fire Ins. Co.*, 271 AD2d 439 [2000]). "It is the responsibility of the insurer to explain its delay" in disclaiming coverage (*Hartford Ins. Co. v County of Nassau, supra* at 1030; *see Matter of Nationwide Mut. Ins. Co. v Steiner*, 199 AD2d 507 [1993]). An insurer's explanation of such a delay "is insufficient as a matter of law where the basis for denying coverage was or should have been readily apparent before the onset of the delay" (*First Fin. Ins. Co. v Jetco Contr. Corp., supra* at 69). *Allstate Ins. Co. v. Cruz*, 30 A.D.3d 511, 512 (2nd Dept. 2006).

The only basis for disclaiming coverage in Allstate's disclaimer letter is that the policy contains an exclusion for bodily injury to an "insured person" and that DeFebio is an "insured person" as defined in the policy as "you and, if a resident of your household: any relative". Pl. Ex. E, Disclaimer letter dated February 25, 2013.

All relevant facts supporting the basis for the disclaimer were immediately apparent on January 23, 2013, when Allstate was placed on notice of the accident by its insured, Juliano. Along with details about the accident, according to Allstate's Claim History Report dated January 23, 2013, Allstate was informed that DeFebio was its insured cousin and resided with the insured. Pl. Ex. D, Allstate Claim History Report page 13. The following day, in Allstate's Claim History Report dated January 24, 2013, are the following notes: "1/24/2013 9:33 AM Central Coverage Investigation Set up o/i as a rush, claimant lives at property address and need

22

to review statements, appears we will need to disclaim as she might be considered an insured person." Pl. Ex. D, Allstate Claim History Report page 11.

Here, the subsequent investigation as admitted by Allstate's Senior Claim Services Consultant Declaration Ann-Marie Griffin in her Declaration (¶ 3-4) submitted in support of Allstate's motion for summary judgment did nothing more than confirm what Allstate already knew when the claim was initially reported by Juliano that "Angela Maria DeFebio is her cousin who resides in her apartment." As such, the proffered basis for the disclaimer that the plaintiff, DeFebio, in the underlying action was Juliano's cousin who resides in her apartment, was a fact which was readily ascertainable from the initial notice of the accident and no investigation into the basis for disclaiming was necessary. *Fish King Enters. v. Countrywide Ins. Co.*, 88 A.D.3d 639, 641-642 (2nd Dept. 2011).

On February 25, 2013, thirty-three days after receiving notice Allstate sent a disclaimer letter in which the sole basis on which Allstate disclaimed coverage, was the claim that DeFebio is a household resident relative of the insured, which was obvious from the initial notice and Allstate had no need to conduct an investigation before determining whether to disclaim (*see Matter of Firemen's Fund Ins. Co. of Newark v. Hopkins*, 88 N.Y.2d 836, 837[1996]). Allstate's 33-day delay in disclaiming coverage was therefore unreasonable as a matter of law under Insurance Law § 3420(d)(2). (*Cruz*, 30 A.D.3d at 512 [30 day delay found unreasonable]; *West 16th St. Tenants Corp. v. Public Serv. Mut. Ins. Co.*, 290 A.D.2d 278, 279 [1st Dept. 2002], *lv. denied* 98 N.Y.2d 605 [2002] [30 day delay found unreasonable]; *Sirius Am. Ins. Co. v. Vigo Constr. Corp.*, 48 A.D.3d 450, 452 [2nd Dept. 2008] [34 day delay found unreasonable as a matter of law]; *Gregorio v J.M. Dennis Constr. Co. Corp.*, 21 A.D.3d 1056, 1056 [2nd Dept. 2005] [36 day delay found unreasonable]).

23

When an explanation for a delay in disclaiming is an assertion that that there was a need to investigate issues that will affect the decision on whether to disclaim the burden, the burden is on the insurer to establish that the delay was reasonably related to the completion of a necessary, thorough, and diligent investigation (*Quincy Mut. Fire Ins. Co. v. Uribe*, 45 A.D.3d 661, 661-662 [2nd Dept. 2007]).

No evidence has been produced by Allstate demonstrating that an investigation was necessary. As the Appellate Division Second Department explained in *Fish King Enters. v. Countrywide Ins. Co.*, 88 A.D.3d 641-642 (emphasis added and internal citations omitted),

> The Supreme Court erred in determining that Countrywide's disclaimer of coverage was timely pursuant to Insurance Law § 3420 (d). "The timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage". An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay. **Here, Countrywide argued that, after its receipt of the summons and complaint in the underlying action, an investigation was required to evaluate the full extent of the actions and the identity of all relevant parties. However, the proffered basis for the disclaimer was that the plaintiff in the underlying action was an employee of Fish King, a fact which was readily ascertainable from the face of the complaint in the underlying action. Accordingly, the disclaimer, issued 49 days after Countrywide's receipt of that complaint, was untimely as a matter of law.**

In *First Financial Ins. Co. v. Jetco Contr. Corp.*, 1 N.Y.3d 64 (2003), it was held that a delay of 48-days in giving written notice of its disclaimer of coverage was unreasonable as a matter of law and barred the disclaimer. The insurer contended that its 48-day disclaimer was reasonable as it was investigating alternative sources of insurance available for Jetco's benefit and this, according to First Financial Insurance, was a reasonable delay for disclaiming. The accident was reported by the insured approximately 2-months after it occurred, and the insured's president had known of the accident since the day it occurred.

24

The Court of Appeals in *First Financial Ins. Co.*, at page 70 cited, with approval, the appellate division cases holding delays of thirty, forty-one, and forty-two days after the insurer was placed on notice as unreasonable as a matter of law.

More recently, in *Country-Wide Ins. Co. v. Preferred Trucking Services Corp.*, 22 N.Y.3d 571, 576 (2014) the Court of Appeals noted that in cases involving disclaimers in which the basis for disclaiming is apparent upon receipt of the notice "a disclaimer must be made rapidly." The Court of Appeals cited *Cruz*, 30 A.D.3d at 512 [30 days] and *Fish King Enters.*, 88 A.D.3d at 642 [49 days] as examples of delays in disclaiming that were unreasonable as a matter of law where the basis of disclaiming was apparent upon receipt of the notice.

Here, as in *Cruz; Fish King Enters.; First Financial Ins. Co. v. Jetco Contracting Corp.; West 16th Tenants Corp.; Steiner; Pevzner;* and *Squires v. Robert Marini Builders;* the basis for disclaiming was readily apparent from the notice itself and Allstate's unexcused delay of thirty-three days in disclaiming is unreasonable as a matter of law rendering the disclaimer ineffective.

## CONCLUSION

For the reasons set forth herein, Allstate's motion for summary judgment should be denied.

Respectfully submitted,

Berson & Budashewitz, LLP

By:    /s/ Jeffrey A. Berson
        Jeffrey A. Berson
        *Attorneys for Plaintiff*
        15 Maiden Lane, Suite 1305
        New York, New York 10038
        Tel: (212)945-5000
        Fax: (212) 945-0796

Dated: New York, New York
        October 18, 2017