Case 1:16-cv-05735-DLI-RER    Document 13-4    Filed 10/27/17    Page 1 of 26 PageID #: 611

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANGELA MARIA DEFEBIO,

                             Plaintiff,

    -against-

ALLSTATE INSURANCE COMPANY,

                             Defendant.

------------------------------------------------------------X

**Civil Action No.:
16-cv-05735 (DLI)**

## ALLSTATE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE 56

Respectfully Submitted,

LEWIS JOHS AVALLONE AVILES, LLP
Attorneys for Defendant
One CA Plaza, Suite 225
Islandia, New York 11749
(631) 755-0101
Kmberberich@lewisjohs.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................... ii

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT...........................................................................................................3

POINT I
THE TIMING OF ALLSTATE'S DISCLAIMER WAS REASONABLE
AND TIMELY AS A MATTER OF LAW..............................................................3

A. New York Law Regarding Timely Disclaimers.................................................3

B. Insurers Have a Duty to Investigate Claims .....................................................4

C. Allstate Engaged in a Prompt, Diligent and Good Faith
   Investigation of the Claim ...............................................................................6

   1. Any Delay was Caused by Plaintiff's Interference with the Investigation ....8

D. Allstate's Disclaimer was Timely as a Matter of Law .....................................9

E. The Cases Cited in Plaintiff's Brief are Factually Inapposite.........................12

POINT II
PLAINTIFF AND ROSE JULIANO WERE MEMBERS
OF THE SAME HOUSEHOLD ..........................................................................13

A. New York Courts' Approach to Interpreting the Term
   "Household" in Insurance Policies..................................................................13

B. Courts Look to the Circumstances in Each Case to Determine
   Whether Parties are Members of the Same Household .....................................15

C. Plaintiff and Rose Juliano Were Members of the Same Household..................16

POINT III
ANY JUDGMENT AGAINST ALLSTATE MUST BE LIMITED TO
THE APPLICABLE INSURANCE POLICY LIMIT AS MANDATED
BY INSURANCE LAW §3420(A)(2) ...................................................................20

CONCLUSION ....................................................................................................21

i

# TABLE OF AUTHORITIES

*2540 Assoc. Inc. v. Assicurazioni Generali, S.p.A.,*
271 A.D.2d 282 (1st Dep't 2000)...................................................................................4, 6, 10

*Ace Packing v. Co. Inc. v. Campbell Solberg, Inc.,*
41 A.D.3d 12 (1st Dep't 2007) ..........................................................................................4, 5

*Aetna Casualty and Surety Company v. Brice,*
72 A.D.2d 927 (4th Dep't 1979).............................................................................4, 5, 9, 10

*Allstate Ins. Co. v. Cruz,*
30 A.D.3d 511 N.Y.S.2d 129 (2d Dep't 2006) ....................................................................12

*Artis v. Aetna Cas. & Sur. Co.,*
256 A.D.2d 429 (2d Dep't 1998).................................................................10, 11, 13, 15, 16

*Auerbach v. Otsego Mut. Fire Ins. Co.,*
36 A.D.3d 840 (2007) .........................................................................................................14

*Continental Cas. Co. v. Stradford,*
11 N.Y.3d 443 (2008) ...........................................................................................................4

*Denn v. Vanguard Insurance Co.,*
707 F.Supp. 104 (E.D.N.Y. 1989) .................................................................................13, 16

*DeSantis Bros. v. Allstate Ins. Co.,*
244 A.D.2d 183 (1st Dep't, 1997) .......................................................................................10

*First Fin. Ins. Co. v. Jetco Contr. Corp.,*
1 N.Y.3d 64 (2003)..........................................................................................................4, 12

*Fish King Enter. v. Countrywide Ins. Co.,*
88 A.D.3d 639 (2d Dep't 2011)............................................................................................12

*General Assurance Co. v. Schmitt,*
265 A.D.2d 299 (2d Dep't 1999).....................................................................13, 14, 17, 18, 19

*Hartford Ins. Co. v. County of Nassau,*
46 N.Y.2d 1028 (1979).........................................................................................................4

*Hartford Ins. Co. of Midwest v. Casella,*
278 A.D.2d 417 (2d Dep't 2000) ..............................................................................13, 14, 19

ii

*Hayes v. New York City Dep't of Corr.*,
84 F.3d 614 (2d Cir.1996)..........................................................................................18

*In the Matter of Prudential Property & Casualty Company v. (Mathieu)*,
213 A.D.2d 408 (2d Dep't 1995)...............................................................................4, 6, 9

*Kass v. Kass*,
91 N.Y.2d 554 N.Y.S.2d 350 (1998) .........................................................................13

*Korson v. Preferred Mut. Ins. Co.*,
55 A.D.3d 879 N.Y.S.2d 338 (2d Dep't, 2008) .......................................................13, 14, 15

*Matter of Colonial Penn v. Pevzner*,
266 A.D.2d 391 (2d Dep't 1999)................................................................................12

*Matter of New York Cent. Mut. Fire Ins. Co. v. Steiert*,
68 A.D.3d 1120 (2d Dep't 2009) ...............................................................................4

*Merzier v. Allstate Ins. Co.*,
222 Misc.3d 1124(A) (Sup. Ct. Kings Cty., 2009) ...................................................13, 15, 16, 17

*Mount Vernon Fire Ins. Co. v. Harris*,
193 F. Supp 2d 674 (E.D.N.Y. 2002) ........................................................................4, 5

*Matter of Nationwide v. Steiner*,
199 A.D.2d 507 (2d Dep't 1993) ...............................................................................12

*Norfolk & Dedham Mut. Fire Ins. Co. v. Petrizzi*,
121 A.D.276 (1st Dep't 1986)....................................................................................5

*New York University v. First Financial Ins. Co.*,
322 F.3d 750 (2d Cir. 2003).......................................................................................4, 5

*Perma Research & Dev. Co. v. Singer Co.*,
410 F.2d 572 (2d Cir.1969).........................................................................................18

*Public Service Mut. Ins. Co. v. Harlen Housing Associates*,
7 A.D.3d 421 (1st Dep't 2004) ...................................................................................4, 5

*Schaut v. Fireman's Ins. Co. of Newark*,
130 A.D.2d 477 (2d Dep't 1987)................................................................................13, 14

*Schulman v. Indian Harbor Ins. Co.*,
40 A.D.3d 957 (2d Dep't 2007)..................................................................................11

*Shelby Cas. Ins. Co. v. Compono,*
8 A.D.3d 357 (2d Dep't 2004) ...................................................................13, 15

*Shere Drake Ins. Co. v. Block,*
7206 Corp., 265 A.D.2d 78 (4th Dep't 2000) ..............................................6

*Squires v. Robert Marini,*
293 A.D.2d 808 (3d Dep't 2002) ................................................................12

*U.S. Underwriters Ins. Co. v. 614 Const. Corp.,*
142 F.Supp.2d 491 (S.D.N.Y. 2001) ...........................................................11

*U.S. Underwriters Ins. Co. v. Congregation B'nai Israel,*
900 F.Supp. 641 (E.D.N.Y. 1995) ..........................................................4, 5, 6

*United Magazine Co. v. Murdoch Magazines Distribution, Inc.,*
393 F. Supp.2d 199 (S.D.N.Y. 2005) ..........................................................18

*Vesta Fire Ins. Corp. v. Seymour,*
No. 96-CV-3844, 1996 WL 1057158 (E.D.N.Y. Dec. 17, 1996) ...............6

*West 16th Tenants v. Public Service,*
290 A.D.2d 278 (1st Dep't 2002) ................................................................12

*Wilczak v. Ruda & Capozzi, Inc.,*
203 A.D.2d 944 (4th Dep't 1994) .........................................................5, 6, 11

## RULES & LAWS

Fed. R. Civ. P. 56 .........................................................................................1

New York Insurance Law §3420(a)(2). .....................................................2, 20

New York's Insurance Law §3420(d) ........................................................3, 20

## OTHER MATERIALS

American Heritage Dictionary. ...................................................................15

Black's Law Dictionary Free Online Legal Dictionary, 2nd Edition ..........15

Webster's New World College Dictionary ...................................................15

Defendant, Allstate Insurance Company (hereinafter "Allstate"), by and through its attorneys, Lewis Johs Avallone Aviles, LLP, respectfully submits this Memorandum of Law in opposition to Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The basis for Allstate's separate motion for summary judgment, together with the facts and law supporting the grant of such relief to Allstate, is fully set forth in the previously served Declaration of Karen M. Berberich and exhibits attached thereto, Declaration of Ann-Marie Griffin and exhibits attached thereto, Allstate's Memorandum of Law, and Allstate's Statement of Uncontested Facts. Allstate reiterates, as if more fully set forth herein verbatim, each and every argument previously espoused in its motion for summary judgment. In the interest of judicial economy, the arguments proffered in support of Allstate's summary judgment application will not be reiterated here. Rather, this Memorandum will confine itself to responding to the arguments proffered by plaintiff in plaintiff's respective separate motion for summary judgment.

Succinctly stated, this litigation is an insurance coverage dispute. Plaintiff claims that Allstate breached the policy of insurance issued to Rose Juliano by failing to indemnify her for the judgment plaintiff obtained against her in the Underlying Action. Allstate disclaimed coverage for the defense and indemnification of Rose Juliano because the Allstate policy[1] under which plaintiff is seeking coverage excludes coverage for bodily injury to an "insured person." The definition of "insured person" in the policy includes any relative who resides in the named

---

[1] The policy referenced throughout this Memorandum of Law is the Standard Homeowners Policy (Form AP315) with policy number xxxxx2463 issued by Allstate to Rose T. Juliano with effective dates of January 26, 2012 through January 26, 2013 which is attached to the Declaration of Ann-Marie Griffin as Exhibit G.

insured's household.  Plaintiff argues that that the term "household" as used in Allstate's insurance policy is ambiguous and, therefore, must be construed against the insurer.  Plaintiff further argues that Allstate's disclaimer of coverage was untimely because whether plaintiff was a resident of Rose Juliano's household was immediately apparent and, therefore, the delay caused by the investigation of the claim was inexcusable.  However, Allstate will demonstrate that Rose Juliano was not entitled to defense or indemnification in the Underlying Action.  Although the term "household" has been found to be ambiguous in some circumstances, it is not ambiguous in all circumstances.  The evidence will show that there is no ambiguity regarding whether plaintiff, who is the cousin of Rose Juliano, resides in the same household as Rose Juliano.  As such, the exclusion for bodily injury to an insured person applies and bars coverage in this matter.  Allstate will further demonstrate that because the determination as to whether a claimant resides in the same household as an insured is fact-specific, an investigation into the claim was necessary prior to the disclaimer of coverage.  Since the disclaimer was issued immediately after the investigation was completed and legal advice obtained, it must be found to be timely as a matter of law.  Thus, plaintiff's motion for summary judgment must be denied.

Allstate does not dispute that plaintiff followed the necessary prerequisites in order to commence the within action pursuant to New York Insurance Law §3420(a)(2).  However, simply because plaintiff completed the necessary steps in order to have standing to commence an action against Allstate for the unsatisfied judgment does not mean that plaintiff is entitled to recover on the judgment.  There must be coverage under the policy for the judgment.  Here, there is no coverage under the policy.  Further, Allstate also does not dispute the fact that it disclaimed coverage based upon a policy exclusion which requires a

2

timely disclaimer under New York Law. However, here, the disclaimer was timely under New York law.

## ARGUMENT

### POINT I
### THE TIMING OF ALLSTATE'S DISCLAIMER WAS REASONABLE AND TIMELY AS A MATTER OF LAW

Plaintiff argues that Allstate's February 25, 2013 letter disclaiming coverage is untimely as all of the relevant facts necessary for the disclaimer were immediately apparent on January 23, 2013 when Allstate was first notified of the claim. Plaintiff is arguing that Allstate should not have conducted any investigation at all into the claim, and instead just immediately issued a disclaimer based solely on an elderly insured's representations in a conversation. Rest assured, had Allstate actually done what plaintiff is suggesting, the argument on this motion would be that Allstate failed to conduct a necessary investigation into the claim.

Here, Allstate conducted a necessary and permissible investigation into the claim and then obtained advice from legal counsel prior to issuing its disclaimer. Allstate issued its disclaimer *three* days after Allstate completed its investigation and obtained advice from counsel. This can hardly be said to be unreasonable under any set of circumstances. In fact, it is respectfully submitted that there was not any delay at all with respect to issuing the disclaimer to the insured.

### A.    New York Law Regarding Timely Disclaimers

Section 3420(d) of the New York Insurance Law[2] requires an insurer to provide "written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage" after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage.

---

[2] In Allstate's Motion for Summary Judgment Allstate argued that New York law applies to the issues herein. This does not appear to be in dispute as plaintiff cites to New York law in support of her motion for summary judgment.

3

*Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 1029 (1979); *First Fin. Ins. Co. v. Jetco Contr. Corp.,* 1 N.Y.3d 64, 68-69 (2003). An insurer's failure to do so "precludes effective disclaimer or denial." *Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d at 1029. However, it is a basic principle of insurance coverage law that the measure of reasonableness with respect to a timely disclaimer does not begin with the insurer's first notice but, rather, commences at the time the insurer first becomes aware of the facts that form the basis for the disclaimer. *See Continental Cas. Co. v. Stradford,* 11 N.Y.3d 443 (2008); *Matter of New York Cent. Mut. Fire Ins. Co. v. Steiert,* 68 A.D.3d 1120, 1121 (2d Dep't 2009); *2540 Assoc. Inc. v. Assicurazioni Generali, S.p.A.,* 271 A.D.2d 282, 284 (1st Dep't 2000); *In the Matter of Prudential Property & Casualty Company v. (Mathieu),* 213 A.D.2d 408, 408 (2d Dep't 1995). When an investigation is warranted or advice of counsel is sought, it is not until after the investigation is complete and the advice received that the insurer becomes aware of the facts that form the basis for the disclaimer. *Id.; see also New York University v. First Financial Ins. Co.,* 322 F.3d 750, 754 (2d Cir. 2003); *Mount Vernon Fire Ins. Co. v. Harris,* 193 F.Supp. 2d 674, 678 (E.D.N.Y. 2002) (applying New York law); *U.S. Underwriters Ins. Co. v. Congregation B'nai Israel,* 900 F.Supp. 641, 648 (E.D.N.Y. 1995) (applying New York law); *Ace Packing v. Co. Inc. v. Campbell Solberg Assoc. Inc.,* 41 A.D.3d 12, 15-16 (1st Dep't 2007); *Public Service Mut. Ins. Co. v. Harlen Housing Associates,* 7 A.D.3d 421, 423 (1st Dep't 2004); *Aetna Casualty and Surety Company v. Brice,* 72 A.D.2d 927, 929 (4th Dep't 1979).

**B.    Insurers Have a Duty to Investigate Claims**

It is well-settled that an insurer has a duty to thoroughly investigate a loss or claim, even if it is aware of potential grounds for denial. Under New York law, an insurer must be afforded the opportunity to adequately investigate a claim in order to determine whether coverage is

4

appropriate or whether it should disclaim or deny coverage. *See New York University v. First Financial Ins. Co.*, 322 F.3d 750, 754 (2d Cir. 2003); *U.S. Underwriters Ins. Co. v. Congregation B'nai Israel*, 900 F.Supp. 641, 648 (E.D.N.Y. 1995) (applying New York law); *Ace Packing v. Co. Inc. v. Campbell Solberg Assoc. Inc.*, 41 A.D.3d 12, 15-16 (1st Dep't 2007) (commenting that policy of "disclaim now and investigate later" is not in insurers' or insureds' interests); *Public Service Mut. Ins. Co. v. Harlen Housing Associates*, 7 A.D.3d 421, 423 (1st Dep't 2004) ("it is perfectly reasonable that the insurer verify the surrounding facts so that, if it chooses to disclaim, it does so on the basis of concrete evidence"). As well-expressed by the this Court in *Mount Vernon Fire Ins. Co. v. Harris*:

> [It] is perfectly reasonable that the insurer verify the surrounding facts so that, if it chooses to disclaim, it does so on the basis of concrete evidence. *See Norfolk & Dedham Mut. Fire Ins. Co. v. Petrizzi*, 121 A.D.276, 278 (1st Dep't 1986) (stating that, as a general matter, it is reasonable for insurer to investigate claims). . . . The Court sees no point in discouraging insurers from conducting thorough investigations before disclaiming coverage, as long as they are not used as a dilatory tactic. *See Congregation B'Nai Israel*, 900 F.Supp. at 649. Moreover, simply because a plaintiff may be able to disclaim on a particular ground does not mean that other grounds, discoverable through investigation, do not exist. As several courts have pointed out, forcing an insurer to issue "piecemeal denials of coverage would frustrate [the insurer's] right to investigate claims." *Wilczak v. Ruda & Capozzi, Inc.*, 203 A.D.2d 944, 945, 611 N.Y.S.2d 73 (4th Dep't 1994); *Congregation B'Nai Israel*, 900 F.Supp. at 649 (*quoting Wilczak*). For these reasons, the Court finds that plaintiff's prompt investigation into [the] . . . claim is an adequate justification for the fifty-day delay . . . and that such delay was reasonable as a matter of law.

*Mount Vernon Fire Ins. Co. v. Harris,* 193 F.Supp. 2d 674, 678 (E.D.N.Y. 2002) (applying New York law).

Although the disclaimer may, ultimately be based upon facts known to the insurer early on, the insurer cannot be aware that it has all of the necessary facts until a reasonable investigation is concluded. *Aetna Ca. & Sur. Co. v. Brice*, 72 A.D.2d 927, 929 (1979).

Courts have repeatedly found that "reasonable investigation is preferable to piecemeal disclaimers." *2540 Associates, Inc. v. Assicurazioni Generali, S.p.A.*, 271 A.D.2d 282, 284 (1st Dep't 2000); *Harlen Housing*, 7 A.D.3d at 423; *Wilczak v. Ruda & Capozzi, Inc.*, 203 A.D.2d 944, 945 (4th Dep't 1994).

New York courts have consistently held that a prompt, thorough and good faith investigation into issues affecting an insurer's decision whether to disclaim coverage will excuse any delay in notifying the policyholder of a disclaimer. *See, e.g., In re Prudential Prop. & Cas. Ins. Co. [Mathieu]*, 213 A.D.2d 408, 408 (2d Dep't 1995) (delay of "slightly more than two months" to conduct an investigation deemed reasonable); *Vesta Fire Ins. Corp. v. Seymour*, No. 96- CV-3844, 1996 WL 1057158, at *6 (E.D.N.Y. Dec. 17, 1996) (applying New York law) (same for a period of "just over three months"); *U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel*, 900 F.Supp. 641, 648-49 (E.D.N.Y. 1995) (same for a period of "over two months"); *Shere Drake Ins. Co. v. Block, 7206 Corp.*, 265 A.D.2d 78, 82 (4th Dep't 2000) (liability insurer's disclaimer of coverage made 45 days after receiving notice of claim, satisfied statute requiring disclaimer of coverage be made as soon as reasonably possible); *2540 Assoc. Inc. v. Assicurazioni Generali, S.p.A.*, 271 A.D.2d 282, 284 (1st Dep't 2000) (two month delay was reasonable because of insurer's need to conduct a "prompt, diligent and good faith investigation of the claim").

## C.   Allstate Engaged in a Prompt, Diligent and Good Faith Investigation of the Claim

Here, there is simply no question that Allstate engaged in a prompt, diligent and good faith investigation of the claim. Allstate was notified of the claim on January 23, 2013. *See* Declaration of Ann-Marie Griffin in Opposition to Plaintiff's motion for Summary Judgment (hereinafter "Second Griffin Dec. #2"), ¶ 2. During Allstate's discussion with the insured,

6

Allstate learned that Angela Maria DeFebio is the insured's cousin who resides in her apartment. *See* Second Griffin Dec., ¶ 3. Upon learning this information, the claim was immediately referred to an outside investigator to obtain more information regarding the living situation of Ms. Juliano and Ms. DeFebio. *Id.* On January 24, 2013, the very next day after being notified of the claim, Allstate assigned this matter to an investigator in order to obtain a statement from the insured regarding her living arrangements with Ms. DeFebio. *Id.*

On January 29, 2013, Allstate received a report from the investigator outlining their attempts to obtain a statement from the insured, and why they had not yet obtained the statement. *See* Second Griffin Dec., ¶ 4. A copy of the investigator's report is annexed to the Declaration of Ann-Marie Griffin as Exhibit "A." According to the report, the statement could not be obtained because the plaintiff continuously interfered with the investigator's attempts to speak with the insured alone. *See* Second Griffin Dec., ¶ 4 and Ex. A. After receiving the investigator's report and realizing that Ms. DeFebio was hampering Allstate's investigative efforts, Allstate spoke with Ms. DeFebio's attorney and requested that he advise his client to stop interfering in Allstate's investigation. *See* Second Griffin Dec., ¶ 5. After Ms. DeFebio's attorney intervened, the investigator was able to obtain the insured's statement. *See* Second Griffin Dec., ¶¶ 5-6. A copy of the second investigator's report is annexed to the Declaration of Ann-Marie Griffin as Exhibit "B."

On or about February 11, 2013, Allstate received a second report from its investigator which contained a signed statement from the insured. *See* Second Griffin Dec., ¶ 6 & Ex. B. The insured's statement confirmed that Angela Maria DeFebio is her cousin and that Rose T. Juliano and Angela Maria DeFebio both reside in the first-floor apartment located at 61 Duffield Street, in Brooklyn, New York. *See* Second Griffin Dec., ¶ 7 & Ex. B. The statement explained

7

that Ms. DeFebio has a bedroom in the insured's apartment and the two share the kitchen and bathroom. *Id.* Further, Rose Juliano explained that Ms. DeFebio has lived with her for ten years and that she does not charge her rent because they are family. *Id.*

Once the investigator's report was received, Allstate sought the advice of counsel to provide a legal analysis as to whether the circumstances surrounding Ms. DeFebio's residence warranted a finding that she resided in the same household as Ms. Juliano. *See* Second Griffin Dec., ¶ 8. Legal counsel prepared a coverage opinion for Allstate, which was received on February 22, 2013. *Id.* On February 25, 2013, three days after receiving the coverage opinion, a disclaimer of liability was issued, stating that since Ms. DeFebio resided in Ms. Juliano's household, she is an insured person under the policy and coverage for her bodily injury is excluded. *Id.*

The investigation and advice from legal counsel were necessary in order to determine if coverage should be afforded for this claim. *See* Second Griffin Dec., ¶10. Once the investigation was completed and Allstate received advice from counsel, the disclaimer was issued. *See* Second Griffin Dec., ¶ 8. The disclaimer was issued three days after receipt of the coverage opinion. *See* Second Griffin Dec., ¶ 9.

### 1.   Any Delay was Caused by Plaintiff's Interference with the Investigation

Further, it needs to be noted that the delay in obtaining the statement from the insured was due to the plaintiff's interference into the investigation and her refusal to allow Allstate to obtain a statement of the insured outside her presence. *See* Second Griffin Dec., ¶¶ 4-6. It was plaintiff who interfered in the investigation, and hampered Allstate's ability to speak to its own insured. Any delay was solely the result of plaintiff's own interference. Plaintiff should not be

8

permitted to argue that Allstate's disclaimer is untimely when it was her own actions that caused the delay.

Under New York law, where a delay is caused by an investigator's inability, through no fault of his own, to obtain statements from the claimant and/or insured, New York Courts will find that the delay was excused. *See Aetna Cas. & Sur. Co. v Brice*, 72 A.D.2d 927, *affd* 50 N.Y.2d 958 (1980); *see also Matter of Prudential Property & Cas. Ins. Co, (Mathieu)*, 213 A.D.2d 408 (2d Dep't 1995) (noting that the disclaimer was not unreasonably delayed when Prudential came forward with adequate evidence establishing that it engaged in a reasonably prompt, thorough, and diligent investigation of the claim and repeatedly and unsuccessfully attempted to have the insured made available for the purpose of providing a written statement in accordance with the requirements of the policy).

## D.    Allstate's Disclaimer was Timely as a Matter of Law

Plaintiff argues that Allstate had all of the information needed to disclaim coverage on the date it was notified of plaintiff's claim because Allstate was told that the plaintiff resided with Rose Juliano. However, this argument over-simplifies the issue of residency and what it means for two parties to reside in the same household. The instant claim is not the type of claim where the basis for disclaimer is immediately apparent by reading the complaint. In order to disclaim on the basis that the plaintiff resides in the same household as the insured, Allstate needed to have all of the facts regarding their living situation. As plaintiff, somewhat contradictorily notes in her motion, the determination of whether two parties reside in the same household is extremely fact-specific. The home in which plaintiff and the insured live is a multi-family home with several different apartments. Therefore, before disclaiming, it was necessary for Allstate to ascertain whether the plaintiff lived in the insured's household or just at the same

9

address. It was necessary for Allstate to complete a thorough investigation prior to disclaiming coverage. It was not enough for Allstate to know that Ms. Juliano and Ms. DeFebio share an address and that both women resided on the first floor of the house. It was necessary to know how the first-floor apartment was configured, what space the two women shared, whether Ms. DeFebio paid rent and utilities, and whether there was one entrance to the apartment, along with other factors concerning the living arrangements bearing on whether the two women shared a household. Only after all of the facts were obtained, and a legal analysis was conducted, could a definitive coverage determination be made. *See* Second Griffin Dec., ¶ 10.

To disclaim coverage prior to a thorough investigation would be premature and could open the insurance carrier up to claims of bad faith handling. Plaintiff's argument that Allstate's disclaimer should have been issued earlier (without completing its coverage investigation) is in contravention to good business practice and the insurer's duty of good faith to its insured. If plaintiff's argument is accepted, it will encourage insurers to make hasty disclaimers without the benefit of thorough investigation.

It was reasonable for Allstate to investigate the relevant factual and legal bases as to whether it had the right to disclaim liability and/or deny coverage under the policy. Investigation into issues affecting an insurer's decision whether to disclaim coverage will excuse any delay in notifying the policyholder of a disclaimer. *See e.g., 2540 Assoc. v Assicurazioni Generali,* 271 A.D.2d 282, 284 (1st Dep't, 2000); *DeSantis Bros. v Allstate Ins. Co.,* 244 A.D.2d 183, 184 (1st Dep't, 1997); *Aetna Cas. & Sur. Co. v Brice,* 72 A.D.2d 927, 928-929 (4th Dep't, 1979). Indeed, the New York Courts have found that investigation into a claim involving the resident/household is proper. *See Artis v. Aetna Cas. & Sur. Co.,* 256 A.D.2d 429, 429-30 (2d Dep't 1998). In *Artis,* the Court found that the insurance carrier's delay of two months in disclaiming coverage

10

was proper, when the delay was caused by the carrier's investigation into the residency of the plaintiff. *Id.*

In *U.S. Underwriters Ins. Co. v. 614 Const. Corp.*, 142 F.Supp.2d 491 (S.D.N.Y. 2001) (applying New York law) the Southern District addressed a similar issue. In this case, the insurer hired an investigator to investigate the plaintiff's allegations. *Id.* The insurer received the results of the investigation and the investigation report was forwarded immediately to counsel for a determination of coverage. *Id.* Counsel provided a coverage opinion. *Id.* Two days after receiving advice of counsel, the insurer disclaimed coverage. *Id.* The Court stated:

> It is not the law of New York – and this Court cannot accept – that a delay of one and half months to disclaim coverage is unreasonable as a matter of law where such a delay is explained by undisputed evidence that the insurer conducted an immediate investigation followed by consultation with counsel. On the contrary, U.S. Underwriters has "submitted proof that the delay in disclaiming was based upon its prompt, diligent and good faith investigation with respect to coverage." *Wilczak*, 611 N.Y.S.2d at 74. Accordingly, the Court finds that plaintiff timely disclaimer coverage of defendants.

Similarly in the instant matter, Allstate disclaimed coverage after a prompt, diligent and good faith investigation into the living situation of the claimant and the insured. Once the investigator's report was obtained, Allstate sought guidance from legal counsel regarding the coverage issue. The advice of legal counsel was necessary due to the fact-specific analysis with respect to the issue of residency. Allstate has shown that the disclaimer was issued after "an immediate investigation followed by consultation with counsel." *U.S. Underwriters Ins. Co. v. 614 Const. Corp.*, 142 F.Supp.2d 491 (S.D.N.Y. 2001); *see also Schulman v Indian Harbor Ins. Co.*, 40 A.D.3d 957 (2d Dep't 2007). Allstate's disclaimer was clearly timely in that it was issued only *three* days after Allstate completed its investigation and obtained the advice from counsel. However, even if the Court were to measure the time period from the date on which plaintiff received the insured's notice, that thirty-three day period is also reasonable as a matter

11

of law. *See Harlen Housing,* 7 A.D.3d at 423 (holding that the twenty-seven day period after the insurer learned of the grounds for the disclaimer was timely as a matter of law and the thirty-seven day period from the original notice would also be reasonable). Plaintiff's argument that Allstate's disclaimer of coverage is untimely is without merit.

**E.     The Cases Cited in Plaintiff's Brief are Factually Inapposite**

All of the cases cited by plaintiff in her motion for summary judgment to support the argument that Allstate's disclaimer is untimely involve a disclaimer based on either late notice to the insurer or on the plaintiff's status as an employee (which was alleged in the complaint). Therefore, the basis for the denial of coverage in these cases was "readily apparent" by reading the complaint. There was no need for an investigation. *See Allstate v. Cruz,* 30 A.D.3d 511 (2d Dep't 2006) (denial based on late notice to insurer); *Fish King Enterprises v. Countrywide Ins. Co.,* 88 A.D.3d 639 (2d Dep't 2011) (denial based on injury to employee exclusion where employee status ascertainable from face of underlying complaint); *First Financial Ins. v. Jetco,* 1 N.Y.3d 64 (2003) (denial based on late notice to insurer); *West 16th Tenants v. Public Service,* 290 A.D.2d 278 (1st Dep't 2002) (denial based on late notice to insurer); *Matter of Nationwide v. Steiner,* 199 A.D.2d 507 (2d Dep't 1993) (denial based on late notice to insurer); *Matter of Colonial Penn v. Pevzner,* 266 A.D.2d 391 (2d Dep't 1999) (denial based on late notice to insurer); *Squires v. Robert Marini,* 293 A.D.2d 808 (3d Dep't 2002) (denial based on employee exclusion applicability of which was evident from the complaint).

However, here, contrary to plaintiff's assertion, the basis for disclaiming was not readily apparent from the complaint. The complaint did not allege that Rose Juliano and Angela Maria DeFebio were cousins who lived together in the same household. There is no indication in the complaint that the two were related or that the two lived together. Accordingly, here an

12

investigation was necessary and warranted. In the cases cited by plaintiff no investigation was necessary or warranted as the basis for the disclaimer was readily apparent simply by reading the complaint. As an investigation was required into the coverage issues in the case at bar, these cases are inapposite and not relevant to the discussion herein.

## POINT II
## PLAINTIFF AND ROSE JULIANO
## WERE MEMBERS OF THE SAME HOUSHEOLD

A.    New York Courts' Approach to Interpreting the Term "Household"
      in Insurance Policies

Plaintiff claims that the term "household" is ambiguous and thus must be given a restricted or narrow interpretation against the insurer. However, contrary to plaintiff's assertion, the term "household" is certainly not ambiguous in every factual setting. Courts have recognized that "ambiguity" is contextual; words in a contract can be ambiguous in one factual setting but not another. *Schaut v. Firemen's Ins. Co. of Newark*, 130 A.D.2d 477 (2d Dep't 1987); *see also Kass v. Kass*, 91 N.Y.2d 554 (1998). Many courts have found that when looking at the individual circumstances and the aggregate details of the parties' living arrangements that it can be determined as a matter of law whether the parties comprise a household. *See, e.g. Artis v. Aetna Cas. & Sur. Co.*, 256 A.D.2d 429 (2d Dep't 1998); *Merzier v. Allstate Ins. Co.*, 222 Misc.3d 1124(A) at *3 (Sup. Ct. Kings Cty., 2009); *Shelby Cas. Ins. Co. v. Compono*, 8 A.D.3d 357 (2d Dep't 2004); *Korson v. Preferred Mut. Ins. Co.*, 55 A.D.3d 879 (2d Dep't, 2008): *Denn v. Vanguard Insurance Co.*, 707 F.Supp. 104 (E.D.N.Y. 1989); *State Farm Mut. Auto Ins. Co. v. Nater*, 22 A.D.3d 762 (2d Dep't 2005); *General Assurance Co. v. Schmitt*, 265 A.D.2d 299 (2d Dep't 1999); *Hartford Ins. Co. of Midwest v. Casella*, 278 A.D.2d 417 (2d Dep't 2000).

13

Thus, the fact that some cases found "household" to be ambiguous does not mean it is ambiguous as applied here to the instant factual setting. Indeed, in the particular circumstances presented here – where the plaintiff and the insured were cousins that lived together in the same apartment with one entrance, one doorbell and one mailbox and shared all living spaces, including the kitchen, bathroom and sitting room and shared all utilities - it is clear that plaintiff was a member of the insured's household.

Courts do not simply find in favor of coverage where there is disagreement regarding whether a claimant resides in the insured's household. The New York Courts' approach to interpreting the word "household" in insurance policies involves a more in-depth analysis. The proper inquiry for determining whether a claimant resides in the insured's household was articulated by the Second Department in *Korson v. Preferred Mut. Ins. Co.*, 55 A.D.3d 879 (2d Dep't, 2008):

> Its interpretation requires an inquiry into the intent of the parties (*see Auerbach v Otsego Mut. Fire Ins. Co.*, 36 A.D.3d 840, 841 (2007); *Matter of Hartford Ins. Co. of Midwest v Casella*, 278 A.D.2d 417, 418 (2000); *General Assur. Co. v Schmitt*, 265 A.D.2d 299, 300 (1999); *Schaut v Fireman's Ins. Co. of Newark*, 130 A.D.2d 477, 478-479 (1987). The interpretation must reflect the reasonable expectation of the ordinary business person and the circumstances particular to each case must be considered (*see Auerbach v Ostego Mut. Fire Ins. Co.*, 36 A.D.3d at 841; *Matter of Hartford Ins. Co. of Midwest v Casella*, 278 A.D.2d at 418; *General Assur. Co. v Schmitt*, 265 A.D.2d at 300; *Schaut v Fireman's Ins. Co. of Newark*, 130 A.D.2d at 479).

*See Korson v. Preferred Mut. Ins. Co.*, 55 A.D.3d at 881. In *Korson*, the insurance carrier disclaimed coverage based on an exclusion for bodily injury to residents of the named insured's household. The plaintiff, having obtained a judgment against the named insured, brought a declaratory judgment action against the insurance carrier, seeking payment of the judgment. The Second Department held that it was the plaintiff's affirmative burden to prove that he did not

14

reside in the insured's household in order to succeed in his motion. *Id.* at 881. By putting the onus on the person seeking benefits under the policy, the Second Department clearly indicates that the mere existence of ambiguity does not necessitate a finding of no coverage. The claimant must still show that an ordinary business person would have a reasonable expectation that he maintained a separate household. *Id.* In *Korson*, the Second Department not only upheld the lower court's denial of plaintiff's motion for summary judgment, but searched the record and granted summary judgment to the defendant, remitting the matter back to the lower court for a declaration that the carrier was not obligated to defend or indemnify the plaintiff in the underlying litigation. *Id.* This demonstrates that an insurance carrier can issue an effective disclaimer based on the claimant being a member of the insured's household.

**B.    Courts Look to the Circumstances in Each Case to Determine Whether parties are Members of the Same Household**

Courts analyze whether parties are members of the same household on a case-by-case basis. The key characteristic to determining whether parties are members of the same household is whether they "live together" "under the same roof" "in one house or apartment." *See* Point II in Allstate's Memorandum of Law in Support of its Motion for Summary Judgment; *see also* Black's Law Dictionary Free Online Legal Dictionary, 2nd Edition (citations omitted); Webster's New World College Dictionary; American Heritage Dictionary. Typically, when it can it can be determined by the facts presented that the parties "live together" "under one roof", "in one house or apartment" then New York courts have held the parties are members of the same household as a matter of law. *See e.g., Artis v. Aetna Cas. & Sur. Co.*, 256 A.D.2d 429, 429-30 (2d Dep't 1998); *Merzier v. Allstate Ins. Co.*, 222 Misc.3d 1124(A) at *3 (Sup. Ct. Kings Cty., 2009); *Shelby Cas. Ins. Co. v. Compono*, 8 A.D.3d 357, 358 (2d Dep't 2004).

15

**C.**     <u>Plaintiff and Rose Juliano Were Members of the Same Household</u>

In the instant matter, the facts indisputably establish that plaintiff and Rose Juliano "lived together," "under one roof," "in the same apartment" with one kitchen, one bathroom and one sitting room. *See* SOF[3] ¶¶ 24-27, 35-39. They shared the living spaces. *Id.* They also shared the utilities. *See* SOF ¶ 34. Plaintiff did not contribute to the electric bill, cable bill, gas or heating bill, or to the one landline telephone bill for the apartment. *See* SOF ¶ 34. Rose Juliano did not make plaintiff pay any of the utilities or sign a lease. *See* SOF ¶¶ 34, 38. Their apartment had only one entrance, one doorbell and one mailbox. *See* SOF ¶ 30-32. Further, there were not separate entrances and there was no locked interior entrance door. *See* SOF ¶ 30. The plaintiff and Rose Juliano were family cousins who resided together in one household for at least three years before the accident. *See* SOF ¶¶ 22-27.

Plaintiff argues that she is not a member of her cousin's household because of the following facts:  (a) because she paid rent; (b) because plaintiff and Rose Juliano do not share groceries or eat together; (c) because the room she rents had a locked door and Rose Juliano does not have access to the room; and (d) because Rose Juliano did not consider plaintiff to be a member of her household. None of these factors impact the fact that the two cousins were part of the same household. First, the fact that the plaintiff paid rent is not a consideration. The Court in *Artis v. Aetna Cas. & Sur. Co.*, 256 A.D.2d 429, 429-30 (2d Dep't 1998) specifically held that in a situation where the insured's Aunt was renting a room in her house, and the two were living together that she was a resident relative for purposes of the same policy exclusion at issue herein. The fact that the insured's Aunt was paying rent was of no consequence to whether the two were members of the same household. Indeed, in *Denn v. Vanguard Insurance Co.*, 707 F.Supp. 104, 105 (E.D.N.Y. 1989) and in *Merzier v. Allstate Ins. Co.*, 222 Misc.3d 1124(A) at *3

---

[3] SOF refers to Allstate's Uncontested Statement of Facts in Support of its Motion for Summary Judgment.

16

(Sup. Ct. Kings Cty., 2009), the Court also held that the parties were members of the same household despite the fact that the relatives were paying rent to the insureds.

Further, the fact that plaintiff and Rose Juliano do not share groceries or eat together also does not impact that fact that the two cousins were part of the same household. In *Merzier v. Allstate Ins. Co.*, 222 Misc.3d 1124(A) at \*3 (Sup. Ct. Kings Cty., 2009) despite plaintiff arguing that her household was separate from her sister's household because she pays rent for a room within the same apartment, and that they both had separate rooms, cookware, mealtimes and shopping arrangements, the Court held that they were members of the same household evidenced by the fact that they shared the living spaces in the apartment including the kitchen, bathroom facilities, and living room, shared the gas and electric connections and telephone service, and shared a common entrance to the apartment. Here, the fact that the plaintiff pays rent and that plaintiff and Rose Juliano do not share groceries or eat together does not negate their household status when they shared the living spaces in the apartment including the kitchen, bathroom and sitting room, shared the gas and electric connections and telephone service, and shared a common entrance to the apartment.

In addition, the fact that plaintiff's bedroom had a locked door and Rose Juliano did not have access to the room does not impact whether they were members of the same household. If it did, many teenagers in America would all of a sudden not be members of their parents' households. Indeed, most bedroom doors contain locks on them. It does not mean that the person who has a bedroom with a lock on the door ceases to be a member of the household. Rather, where the courts have found separate households is where the parties have an entirely separate locked living space, such as a separate apartment with a locked door, as opposed to a bedroom with a lock within a shared apartment. In *General Assurance Co. v. Schmitt*, 265

17

A.D.2d 299, 300-01, the insured was the owner of a two-family house. *Id.* The house consisted of two apartments. *Id.* The insured lived in one apartment and her daughter lived in the other. *Id.* The apartments shared a common heating system and mailbox, but had separate utility connections as well as separate kitchen and bathroom facilities. *Id.* The Court found that the defendant was not a member of the insured's household because the two each had apartments that were separated by a locked inner entrance door, preventing the defendant and insured from entering the other's apartment at will. *Id.* In *Schmitt* there was an entirely separate apartment with a separate kitchen, bathroom and utilities connections that was separated by an interior locked door. A locked door to a separate apartment indicates a separate household; however, a locked bedroom door in the same apartment does not.

Last, plaintiff argues that because Rose Juliano did not consider plaintiff to be a member of her household that she should not be considered a member of her household. It is well-established that a self-serving affidavit is insufficient to defeat summary judgment. *See United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 393 F. Supp.2d 199 (S.D.N.Y. 2005); *see also Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.") (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969)). Further, the living arrangement clearly indicates otherwise. Therefore, even if Ms. Juliano genuinely believed that her cousin who had been living with her for at least three years before the accident was not part of her household, it is irrelevant because the fact that they "lived together" "under the same roof" "in one apartment" makes them members of the same household as a matter of law. The insured's personal thoughts on the matter will not negate the actual circumstances of the living arrangement.

18

The situation where courts have found separate households are when the parties live in separate apartments within the same building, and when they have their own kitchen and bathroom, pay separate utility bills, and enter the living space through separate locked doors (which is not the situation herein). *See Hartford Ins. Co. of Midwest v. Casella*, 278 A.D.2d 417, 418 (2d Dep't 2000); *General Assurance Co. v. Schmitt*, 265 A.D.2d 299, 301 (2d Dep't 1999). In *Hartford Ins. Co. of Midwest v. Casella*, 278 A.D.2d 417, 417 (2d Dep't 2000) the insured owned a two-family house with only one exterior door. *Id.* The insured resided in the upper level area, while his niece resided in the lower level area. *Id.* The insured considered each living space as a separate home with separate entrances and utilities. *Id* at 418. The Court determined that "depiction of the parties' living arrangements reveals that [the insured] did not consider [his niece] to be a member of his household." *Id.*

In the instant matter, there are not separate apartments, separate utilities, separate living rooms, separate bathrooms and separate kitchens like in *Schmitt* and *Casella*, *supra*. *See* SOF ¶¶ 28-45. Further, there were not separate entrances and there was no locked interior entrance door. *See* SOF ¶ 30. Plaintiff and Rose Juliano "lived together," "under one roof," "in the same apartment" with one kitchen, one bathroom and one sitting room, and with one entrance, doorbell and mailbox. *See* SOF ¶¶ 24-27, 30-32, 35-39. They shared the living spaces, specifically the kitchen, sitting room and bathroom, and shared the household expenses including the all utilities. *Id.* Therefore, under the relevant case law cited *supra* they are part of the same household as a matter of law. *See* SOF ¶¶ 24-27, 35-39, 34.

Viewing the individual circumstances of the living arrangements between plaintiff and Rose Juliano it is clear that an average person would consider them to be part of the same household. Here, the totality of the factual circumstances compels a finding that plaintiff and

19

Rose Juliano were part of the same household as a matter of law and as such, plaintiff is not entitled to summary judgment.

## POINT III

### ANY JUDGMENT AGAINST ALLSTATE MUST BE LIMITED TO THE APPLICABLE INSURANCE POLICY LIMIT AS MANDATED BY INSURANCE LAW §3420(A)(2)

The statutory language of Insurance Law §3420(a)(2) mandates that any judgment maintained against an insurer under said provision, *not exceed* the amount of the applicable limit of coverage under such policy or contract. Specifically, Insurance Law § 3420(a)(2) provides as follows:

> "(2) A provision that in case judgment against the insured or the insured's personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy of contract for the amount of such judgment *not exceeding the amount of the applicable limit of coverage under such policy or contract.*"

N.Y. Insurance Law § 3420(a)(2) (emphasis added).

The policy limits in this case are $300,000.00. *See* Exhibit G, Policy Declarations. Accordingly, as plaintiff's action was filed pursuant to Insurance Law §3420(d), the recovery sought *cannot* exceed the limits of the policy pursuant to the statute's own language and mandates. The judgment entered against Rose Juliano in the amount of $306,755.00 exceeds the maximum coverage limits of $300,000.00. Allstate submits that its motion for summary judgment should be granted for the reasons stated above and plaintiff's motion for summary judgment denied; however, if the court disagrees and grants plaintiff's motion for summary judgment, the amount of the judgment must be limited to Allstate's policy limits.

20

## CONCLUSION

Allstate's disclaimer of coverage was proper and Allstate has no obligation to indemnify the insured for the judgment plaintiff obtained against her in the Underlying Action. The plaintiff was a relative of the insured who resides in her household and, therefore, is an "insured person" as defined by the Allstate policy. The policy excludes coverage for bodily injury to an insured person. Therefore, plaintiff is not entitled to collect payment of the judgment from Allstate.

Plaintiff has failed to show that she is entitled to coverage for the judgment she obtained against Rose Juliano in the Underlying Action. As such, plaintiff's motion for summary judgment must be denied in its entirety.

Dated: Islandia, New York
      October 5, 2017

KAREN M. BERBERICH