UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ANGELA MARIA DEFEBIO,  :
:
                      Plaintiff,  :
:    **MEMORANDUM & ORDER**
                -against-  :    16-cv-05735-DLI
:
ALLSTATE INSURANCE CO.,  :
:
                    Defendant.  :
------------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Angela Maria DeFebio ("Plaintiff") filed this insurance coverage action against defendant Allstate Insurance Company ("Allstate") to recover for a judgment entered against Plaintiff's cousin, Rose Juliano ("Juliano"), who is insured under a homeowner's policy issued by Allstate. Plaintiff suffered personal injuries after falling off of a ladder in the apartment that she shared with Juliano. Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth more fully below, the Court grants Allstate's motion and denies Plaintiff's motion.

**I.    BACKGROUND**[1]

Plaintiff's cousin, Rose Juliano, was the owner of a multifamily house located at 61 Duffield Street, Brooklyn, New York. At all relevant times, Juliano and Plaintiff resided together in the first floor apartment of the house. On January 16, 2013, Plaintiff fell from a ladder while hanging curtains in the apartment, sustaining significant personal injuries. Plaintiff filed a negligence suit in a case captioned *Angela Maria DeFebio v. Rose Juliano* in New York State Supreme Court, Kings County, seeking damages as a result of Juliano's alleged negligent

---

[1]    Except where otherwise stated, the background is taken from facts that are not genuinely in dispute.

maintenance of the ladder (the "Underlying Action"). After Juliano failed to appear in the Underlying Action, the court entered judgment against her in the amount of $306,755.00. After the judgment was entered, Plaintiff commenced this action alleging that under Juliano's standard homeowner's policy, Allstate is obligated to satisfy the judgment. Allstate argues that the policy does not cover Plaintiff's injuries because, as a relative who resides in Juliano's household, she is an "insured person" under the policy for whom coverage for bodily injuries is excluded. Plaintiff objects to the application of this exclusion to her living arrangement with Juliano, arguing that she was not a member of Juliano's household. Plaintiff also argues that Allstate's delay in disclaiming coverage was unreasonable because Allstate had knowledge of all relevant facts at the time the accident was first reported.

  A.  The Policy

The policy at issue is a Standard Homeowner's Policy, policy number xxxxx2463, issued by Allstate to Juliano, effective January 26, 2012, through January 26, 2013 (the "policy"). (Berberich Decl., Ex. G (Docket Entry No. 9-12)). Juliano is the only named insured. In a coverage provision entitled "Family Liability Protection," the policy provides coverage for certain damages arising from bodily injury. It provides, in relevant part, as follows:

> **Coverage X**
> **Family Liability Protection**
> **Losses We Cover Under Coverage X:**
>
> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy. **We** are not obligated to pay any claim or judgment after we have exhausted our limit of liability.
>
> If an **insured person** is sued for these damages, **we** will provide a defense at our expense with counsel of our choice, even if the allegations are groundless, false or fraudulent. **We** may investigate or settle any claim or suit for covered damages against an **insured person**.

(*Id.* at 18) (emphasis in original to denote defined terms). The policy provides $300,000 of bodily injury liability coverage.

The policy contains an exclusion that bars coverage for bodily injury to an "insured person," as that term is defined elsewhere in the policy. The exclusion states: "**We** do not cover **bodily injury** to an **insured person** . . . whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**." (*Id.*). The policy defines "insured person" as follows:

> "Insured person(s)" - means **you** and, if a resident of **your** household:
> a)     any relative; and
> b)     any dependent person in **your** care.

(*Id.* at 2).

### B.     Plaintiff's Living Arrangement

Rose Juliano owns the three-family home located at 61 Duffield Street. She rents the third floor apartment to a Mr. and Mrs. Grant pursuant to a written lease agreement. The second floor is occupied by Plaintiff's mother, Elvira DeFebrio, who is also Juliano's aunt. Elvira DeFebrio does not have a written lease agreement with Juliano. On the date of the accident and for at least three years prior, Plaintiff and Juliano resided together in the first floor apartment. Plaintiff does not have a written lease agreement with Juliano but does pay monthly rent.[2]

The apartment that Plaintiff and Juliano shared had one front entrance and two bedrooms. Plaintiff occupied one bedroom where she slept and kept her belongings. Juliano occupied the second bedroom that was previously part of the living room but had been converted to a bedroom. Plaintiff had a lock on her bedroom door to which Juliano does not have access. Plaintiff and

---

[2]     There is conflicting testimony as to whether Plaintiff pays rent. Allstate's investigator's report indicates that Elvira DeFebrio pays $600 in rent each month, in cash, and that Plaintiff does not pay rent "because they are family." (Griffin Decl., Ex. B (Docket Entry No. 13-3) at 3).[2] Plaintiff's affidavit, however, states that she pays Juliano monthly rent. (*See* Pl.'s Aff. (Docket Entry No. 12-4) ¶ 3; Juliano Aff. (Docket Entry No. 12-5) ¶ 5). In considering Allstate's motion, the Court will presume that Plaintiff paid monthly rent for her bedroom.

Juliano shared the kitchen, bathroom, and sitting area. There was one mailbox for the shared apartment. The electric bill, cable bill, and telephone bill were in Juliano's name. Plaintiff did not contribute to the utilities in the apartment in January 2013 or in the three years prior.

### C. Allstate's Investigation and Disclaimer

On January 16, 2013, Plaintiff fell from Juliano's folding ladder while hanging curtains in their shared kitchen. On January 23, 2013, Juliano reported the accident to Allstate by telephone. During the call, Juliano informed Allstate of certain facts concerning their living arrangement, including that Plaintiff is her cousin who resides with her and pays rent. Allstate's claim notes document Juliano's initial call to Allstate:

> S/W NAMED INSURED. CLMNT IS HER COUSIN WHO RESIDES WITH INSD. SHE PAYS RENT/BILLS. INSD IS 80 YRS OLD CLMNT IS 56. CLMNT WAS HANGING SOME CURTAINS FOR INSD. USING INSD'S FOLDING LADDER APPROX 5-6 FEET TALL. HUNG CURTAINS WAS DESCENDING LADDER WHEN SHE MISSED A STEP OR SLIPPED.

(Pl.'s Rule 56 Statement, Ex. D at 13 (Docket Entry No. 12-7)).

Upon learning that Plaintiff is Juliano's cousin and lives in the same apartment, Allstate opened an investigation. On January 24, 2013, the day after being notified of the claim, Allstate assigned the matter to an outside investigator to obtain a statement from Juliano, its insured, regarding her living arrangements with Plaintiff. On January 29, 2013, Allstate received a report from the investigator noting three unsuccessful attempts to speak with Juliano by phone, which prompted the investigator to conduct a "cold call" to the house on January 27, 2013. (Griffin Aff., Ex. A at 1-2 (Docket Entry No. 13-2)). During this meeting, Juliano would not provide a statement to the investigator. After subsequent calls to the home and conversations between Allstate and Juliano's attorney, Juliano gave her written statement on February 6, 2013. (*Id.* at 2). On February 11, 2013, Allstate received the investigator's second written report, dated February 8, 2013, completing the investigation. (Griffin Aff. ¶ 6.)

Allstate's claim file notes, dated February 12, 2013, state as follows:

> Comments:
> O/I [outside investigator] Investigation confirms the claimant (insured's cousin) lives in her first floor apartment and they share kitchen and bathroom. O/I database search found claimant cousin living at the address for the past 10 years. Recommend coverage opinion from coverage counsel for possible disclaimer for B.I. to an "Insured Person". Will need to refer file to H.O. if disclaimer warranted due to severity of claimant injury.
> Description: * Coverage Opinion recommendation.

(Pl's Rule 56 Statement, Ex. G (Docket Entry No. 12-10)). On February 12, 2013, Allstate submitted the claim to coverage counsel, who provided a coverage opinion on February 22, 2013. (Griffin Aff. ¶ 8).

On February 25, 2013, three days after receiving the coverage opinion, Allstate disclaimed coverage. (Pl's Rule 56 Statement, Ex. E (Docket Entry No. 12-8)). The basis for Allstate's disclaimer was that Plaintiff is an "insured person" as that term is defined in the policy, and the policy excludes coverage for bodily injury to insured persons.

### D. Procedural History

On September 18, 2013, Plaintiff filed the Underlying Action against Juliano in New York State Supreme Court, Kings County. Juliano forwarded the lawsuit to Allstate. In response, Allstate issued a letter dated October 18, 2013, repeating its coverage position. (Pl.'s Rule 56 Statement, Ex. I (Docket Entry No. 12-12)). On May 3, 2016, judgment was entered against Juliano in the amount of $306,755.00. The judgment remains unsatisfied.

On September 20, 2016, Plaintiff filed the present action against Allstate in the New York State Supreme Court, Kings County. On October 14, 2016, Allstate timely removed the action to this Court. (Docket Entry No. 1). On October 27, 2017, the parties filed their fully briefed cross-motions for summary judgment. (Docket Entry Nos. 9, 12).

Allstate argues that it is entitled to summary judgment because Plaintiff is Juliano's relative who lives in her "household," and, therefore, is an "insured person" for whom coverage is excluded. Plaintiff argues that the term "household" in the resident relative exclusion is ambiguous and, therefore, should be interpreted in favor of coverage. Plaintiff also contends that Allstate's 33-day delay from the time Juliano first notified Allstate of her claim to the time Allstate disclaimed coverage was unreasonable as a matter of law and renders the disclaimer ineffective. For the reasons set forth below, Allstate's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where, as here, parties to an action cross-move for summary judgment, the Court must consider each motion independently, and must apply the same standards, drawing all reasonable inferences "against the party whose motion is under consideration." *Town of Southold v. Town of*

*East Hampton*, 477 F.3d 38, 46 (2d Cir. 2007) (citation omitted). Each cross-movant is required to present sufficient evidence to allow the court to enter judgment in its favor. *See Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988).

### B. The Resident Relative Exclusion

Plaintiff admits that she is Juliano's relative and resided with her in the first floor apartment at all relevant times. Plaintiff argues, however, that the term "household" is ambiguous and must be interpreted in favor of coverage. She further argues that as applied to the facts here, she did not reside in Juliano's "household" because she paid rent, had separate groceries and mealtimes, and had a lock on her bedroom door.

Under New York law, the court interprets insurance policies according to general rules of contract interpretation. *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012).[3] Generally, courts refer to the language of the contract to determine whether it is unambiguous, construing the words using common speech. *Am. Automobile Ins. Co. v. Sec. Income Planners & Co., LLC*, 847 F. Supp.2d 454, 461 (E.D.N.Y. 2012). Specifically, "[i]nsurance contracts must be interpreted 'according to the reasonable expectation and purpose of the ordinary businessman when making an ordinary business contract.'" *Silverman Neu, LLP v. Admiral Ins. Co.*, 2013 WL 1248629, at *8 (E.D.N.Y. Mar. 28, 2013) (quoting *GMAC v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 457 (2005)). Additionally, to the extent that there are ambiguous terms, they are to be construed against the insurer. *Am. Automobile Ins. Co.*, 847 F. Supp.2d at 461.

New York courts consistently characterize the term "household," as used in insurance policies, as ambiguous, and, thus, "its interpretation requires an inquiry into the intent of the

---

[3] By relying on New York law in their papers, the parties have implicitly agreed that New York law governs, and, therefore, the Court need not undertake a choice-of-law analysis. *See Phila. Indem. Ins. Co. v. City of New York*, 2011 WL 1237586, at *3 n. 3 (S.D.N.Y. Mar. 24, 2011).

7

parties." *Schaut v. Firemen's Ins. Co. of Newark*, 130 A.D.2d 477, 479 (2d Dep't 1987). "The interpretation must reflect the reasonable expectation and purpose of the ordinary business man." *General Assur. Co. v. Schmitt*, 265 A.D.2d 299, 300 (2d Dep't 1999); *Hartford Ins. Co. of Midwest v. Casella*, 278 A.D.2d 417, 418 (2d Dep't 2000). "Moreover, the circumstances particular to each case must be considered in construing the meaning of the term." *Schaut*, 130 A.D.2d at 479 (citations omitted).

The term "household" should be interpreted in a manner favoring coverage where possible, as should any ambiguous language in an insurance policy. *See Rohlin v. Nationwide Mut. Ins. Co.*, 26 A.D.3d 749, 750 (4th Dep't 2006); *Sekulow v. Nationwide Mut. Ins. Co.*, 193 A.D.2d 395, 396 (1st Dep't 1993); *Wrigley v. Potomac Ins. Co.*, 122 A.D.2d 361, 362 (3d Dep't 1986). But summary judgment in favor of the insurer is appropriate where the insured does not make an adequate showing that she maintained a separate household. *See, e.g.*, *Korson v. Preferred Mut. Ins. Co.*, 55 A.D.3d 879, 881 (2d Dep't 2008) (affirming summary judgment for the insurer and holding plaintiff failed "to make a prima facie showing that he maintained a separate household" where the subject house was a single-family home with one mailbox, one electric meter, one gas bill, and unrestricted access between the areas of the home in which plaintiff lived); *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 527 (7th Cir. 2005) ("Nevertheless, where there is no coverage under any reasonable interpretation of . . . the policy summary judgment in favor of the insurer . . . is a proper remedy.") (quotations omitted).

In the circumstances presented here, it is clear that Plaintiff was a member of Juliano's "household" under any reasonable interpretation of the term. Plaintiff occupied one bedroom of the two-bedroom apartment she shared with Juliano without a lease agreement. The apartment had one common entrance, one doorbell, and one mailbox. The women shared the same kitchen,

bathroom, and sitting area. The cable bill, electric bill, and telephone bill were in Juliano's name. Notably, the accident during which Plaintiff was injured occurred as she was putting curtains up in the kitchen shared by her and her cousin. No reasonable jury could find that the parties did not intend to include Plaintiff—as the named insured's cousin residing in and sharing the same dwelling—within the definition of an "insured person" under the homeowner's policy.

On similar facts, a New York state trial court found that the insurer was entitled to summary judgment. *Merzier v. Allstate Ins. Co.*, 2009 WL 399989 (N.Y. Sup. Ct. Feb. 18, 2009). In *Merzier*, the plaintiff was injured when she fell on the first floor of the two-family premises owned by her sister, the named insured, with whom the plaintiff shared the second floor. *Id.* at *1. The plaintiff argued that the two women had separate households because the plaintiff "pays rent for a room within that apartment, . . they both had separate rooms, cookware, mealtimes, and shopping arrangements." *Id.* at *3. The court disagreed, finding that the plaintiff "significantly share[d] an apartment with her sister" because "the sisters shared the remainder of the premises, . . . shared the kitchen and bathroom facilities, the living room, gas and electric connections, telephone service, and a common entrance to the apartment." *Id.*

Plaintiff offers three factual distinctions to support the opposite conclusion: she pays rent, does not share groceries or meals with her cousin, and has a lock on her bedroom door. But these facts do not preclude summary judgment. The payment of rent by a family member does not create a separate household. *See Merzier*, 2009 WL 399989 at *3; *Artis v. Aetna Cas. & Sur. Co.*, 256 A.D.2d 429, 430 (2d Dep't 1998) (reversing trial court and holding insurer was entitled to summary judgment where aunt rented bedroom in the insureds' single-family house); *Denn v. Vanguard Insurance Co.*, 707 F. Supp. 104, 105-06 (E.D.N.Y. 1989) ("contribution . . . to household expenses does not in and of itself change the nature of the relationship . . . . Violet McDermott

9

and her daughters are still relatives who live with the insureds whether or not they contribute to the household expenses."). The fact that Plaintiff and Juliano did not share meals also is not determinative. *See Merzier* at *3. Additionally, while a separate locked internal entrance to an apartment within a multifamily building may separate households, *see, e.g.*, *Schmitt*, 265 A.D.2d at 301, Plaintiff offers no authority to support her argument that a lock on her *bedroom* door separates her from the rest of the home she shares with her cousin.

A finding that Plaintiff was not a member of Juliano's household would stretch that term beyond any reasonable and ordinary understanding. Accordingly, the undisputed facts show that, as a relative who lived in Juliano's household, Plaintiff was an "insured person" under the policy exclusion. Allstate is entitled to summary judgment on this point.

### C. The Timeliness of Allstate's Disclaimer

Allstate disclaimed coverage on February 25, 2013, thirty-three days after Juliano first reported the claim on January 23, 2013. The parties disagree as to whether this notice violates New York Insurance Law § 3420(d), which mandates that an insurer seeking to disclaim liability must "give written notice as soon as is reasonably possible . . . to the insured and injured person or any other claimant." N.Y. Ins. Law § 3420(d). Plaintiff moves for summary judgment that Allstate's disclaimer was untimely as a matter of law.

The New York State Court of Appeals has measured the timeliness of an insurer's notice of disclaimer from the point in time when the insurer first learned of the grounds for disclaimer. *First Fin. Ins. Co. v. Jetco Contr. Corp.*, 1 N.Y.3d 64, 68-69 (2003). "The question of unreasonableness becomes a question of fact, or if extreme, of law, depending upon the circumstances of the case which make it reasonable for the insurer to take more or less time to make, complete, and act diligently on its investigation of its coverage or breach of conditions in

its policy." *Allstate Ins. Co. v. Gross*, 27 N.Y.2d 263 (1970); *see also Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028 (1979) ("'as soon as is reasonably possible' is a question of fact which depends on all the facts and circumstances, especially the length of and the reason for the delay"). Should the delay in notice be found unreasonable as a matter of law, the insurer is precluded from effectively disclaiming liability. *See Hartford*, 46 N.Y.2d at 1029.

Under New York law, "it is clear that insurers are afforded the opportunity to investigate an insured's claim in order to determine whether coverage is appropriate." *N.Y. University v. First Fin. Ins. Co.*, 322 F.3d 750, 754 (2d Cir. 2003). Indeed, an insurer's "need to conduct such investigations in a thorough manner constitutes a sufficient reason for delayed notification." *Id.*; *see also 2540 Assoc. Inc. v. Assicurazioni Generali*, 271 A.D.2d 282 (1st Dep't 2000). However, the time afforded to the insurer is not simply an invitation for frivolous delay as it is the insurer who bears the burden of justifying the delay. *See N.Y. University,* 322 F.3d at 754. A delay will be found unreasonable in situations where the additional investigation was found to have no bearing on the initial reasons for denial of coverage and, quite obviously, when no reason at all has been given for the delay. *See McGinnis v. Mandracchia*, 291 A.D.2d 484 (2d Dep't 2002). New York courts have held that a 45-day delay in denying coverage based on a household resident exclusion was unreasonable as a matter of law where the insurer had sufficient information concerning the injured party's residence at the time the claim was first reported. *Moore v. Ewing*, 9 A.D.3d 484, 488 (2d Dep't 2004).

The 33-day delay before Allstate's disclaimer was not unreasonable because: (i) Allstate reasonably believed it needed more facts regarding Plaintiff's living arrangement to decide coverage properly; (ii) the record otherwise reflects a prompt and diligent investigation on behalf of Allstate's claim consultant and outside investigators; and (iii) the length of the delay was

11

attributable, in part, to Plaintiff and Juliano's delay in providing their statements to Allstate's investigator.

The evidence shows that the only relevant facts known to Allstate on January 23, 2013 were that Plaintiff is Juliano's cousin who resides with her and that Plaintiff pays rent and some bills. (*See* Pl's Ex. D at 13). To make a determination regarding coverage, Allstate was entitled (if not obligated) to promptly obtain such other facts as to the configuration of the house that the two women occupied, how they shared the space, whether there were separate entryways to their living spaces, the division or allocation of rent and utilities, among other information. Plaintiff's argument that Allstate already had all the relevant facts it needed to disclaim coverage oversimplifies the question of her status as an insured person. It was reasonable for Allstate to investigate the women's living situation to determine whether Plaintiff was part of Juliano's "household" and, thus, deemed an "insured person" under the policy. Indeed, Allstate's claim notes dated February 12, 2013 reflect the additional information that Plaintiff "lives in [Juliano's] first floor apartment and they share kitchen and bathroom" and Plaintiff had been "living at the address for the past 10 years." (Pl.'s Rule 56 Statement, Ex. G (Docket Entry No. 12-10)).

Contrary to Plaintiff's argument, the undisputed record shows a prompt and diligent investigation. The day after Juliano first called Allstate, it assigned the matter to an outside investigator. Approximately five days later, the investigator provided a written report detailing his unsuccessful attempts to obtain Juliano's statement. After repeated attempts—including several phone calls and visits to the home—Allstate's investigator finally obtained Juliano's statement on February 6, 2013, approximately fourteen days after she first called Allstate. When evaluating the timeliness of an investigation and disclaimer, delays of a plaintiff's own making are to be discounted. *See, e.g.*, *Matter of Prudential Prop. & Cas. Ins. Co. (Mathieu)*, 213 A.D.2d

408, 408 (2d Dep't 1995) (affirming trial court's finding that disclaimer was not unreasonably delayed where insurer "engaged in a reasonably prompt, thorough, and diligent investigation of the claim and repeatedly and unsuccessfully attempted to have the insured made available for the purpose of providing a written statement in accordance with the requirements of the policy.") (citation omitted).

The undisputed evidence shows that Allstate disclaimed coverage after a good faith investigation into Plaintiff's living situation that was necessary to disclaim coverage. This is not a case in which the insurer had all necessary information at the outset and chose to drag its feet. It was not enough for Allstate to know that Juliano and Plaintiff share an address and that both women resided on the first floor of the house. Allstate properly sought to know how the first floor apartment was configured, what space the two women shared, whether Plaintiff paid rent and separate utilities, and whether there was one entrance to the apartment, along with other factors concerning the living arrangements. Allstate could only make a definitive coverage determination after obtaining sufficient facts. Plaintiff's motion for summary judgment on this basis is denied.

## III. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted, Plaintiff's motion for summary judgment is denied, and this action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      September 28, 2018

                                                  /s/
                                   DORA L. IRIZARRY
                              United States District Judge